**Harriett Thomas MORGAN,**
**Respondent,**

v.

**Richard L. MORGAN, Appellant.**

**No. WD 40063.**

Missouri Court of Appeals,
Western District.

Aug. 23, 1988.

S. Preston Williams, Thomas E. Barzee, Jr., North Kansas City, for appellant.

Vincent F. Igoe, Jr., Patricia L. Hughes, Liberty, for respondent.

Before COVINGTON, P.J., and NUGENT and GAITAN, JJ.

GAITAN, Judge.

This is a dissolution proceeding wherein the appellant/respondent Richard L. Morgan appeals findings made by the trial court relative to the dissolving of his marriage with Harriett Thomas Morgan. He is specifically challenging the findings of the court relative to awarding of maintenance in gross, the distribution of the marital property, and valuation of a business.

Richard and Harriett Morgan were married on June 18, 1977 and remained married for approximately ten years. Apparently they lived together as husband and wife for only eight years, the parties having separated on June 25, 1985. There were no children born of this marriage. Harriet Morgan filed for dissolution on June 25, 1985. Both parties had previously been married. Richard's prior marriage had been dissolved by a decree of dissolution in 1977, and Harriet's prior marriage had ended upon the death of her husband of approximately 28 years. At the time of the filing of the petition for dissolution the appellant was almost 61 years old and the respondent was approximately 59 years old. The respondent's work experience was limited to her working in the business of her former husband and working for the Richard Morgan Agency, Inc. This is an agency which arranges shipments and routing of merchandise by trucklines. The appellant is the sole shareholder of this company, and he owned this business before

the parties married. At the time of the dissolution, the respondent was employed working 30 hours per week as a clerk at a license bureau office, making a net income of $110 per week. She also worked occasionally on weekends, caring for a lady who had had a stroke. She was paid $40 per weekend for her services. In the year 1986, she collected $1500 as rent for farm property she owned. Her total income was $635 per month, and her expenses were approximately $1630 per month.

At the time of the parties' marriage, respondent's property had a net value of approximately $156,000. The majority of her premarital assets were sold and contributed to acquisition of the marital property and to marital expenses. Of the $156,000 in property, respondent retained separate ownership of only three acres of farm land in Bates County, valued at the dissolution at $1200, her $3000 IRA and her lot in Tanglewood valued at $1700 at the time of the marriage and $3,400 at the time of the dissolution. The remainder of her property was contributed to the parties' joint accounts. The appellant, on the other hand, retained the stock ownership of his primary premarital asset, the Richard Morgan Agency, Inc. The appellant controlled the parties' joint accounts, and required respondent to bring back receipts for anything she purchased. Although respondent worked for the agency, appellant handled all of the payroll and taxes. Neither of the parties took a salary regularly out of the corporation.

There was testimony regarding a different attitude on the part of appellant once respondent's premarital assets had been consumed within the business. Respondent also testified that she was threatened by appellant with a gun. There was further testimony that the appellant threatened to leave the respondent penniless.

During the pendency of this action, the appellant was restrained by the court from selling, wasting, or converting marital or non-marital assets including corporate assets, other than in the normal course of business. However, appellant and a friend, Jim Horn, entered into an agreement to purchase the business. The agreement, as drawn up, was dated in December of 1986. Mr. Horn claims he was to purchase Sunshine Trucking Company (owned by appellant) and the brokerage license to operate Richard Morgan Agency and the office supplies and equipment of that agency for $50,000. However, the agreement was not a cash sale and Mr. Morgan kept title to all of the property as collateral to secure payment. Morgan also violated the restraining order of the court by selling a house in Claycomo worth $61,500 which was held in the corporation's name. He then purchased a $150,000 home in Angola, Indiana, using corporate funds for the down payment. He was ordered to keep respondent's health insurance in effect and pay her $1000 a month as temporary maintenance. He violated the court order and failed to keep up the insurance and maintenance. While he claimed he did not have the money, he had sufficient funds to pay health insurance and living expenses of another woman with whom he was living. Additionally, the corporation had sufficient funds to pay appellant's living expenses after the parties separated.

Numerous financial statements of the appellant individually and the Richard L. Morgan Agency, Inc., were received in evidence. Following the parties' separation the figures shown on the financial statements changed dramatically. Prior to the separation, one financial statement, dated February 1, 1985, indicates a stockholder's equity of $9,000 and retained earnings of $715,000. After the parties separated, the financial statement indicated a negative retained earnings figure. Appellant gave a financial statement in March of 1985 indicating he had a personal net worth of $1,112,000, excluding the value of the corporation, and later claimed that financial statement was in error.

## I.

The appellant in his first point regarding the ordering of maintenance-in-gross relies upon the trial court's statement in its findings of fact that the respondent was capable of supporting herself. He thereby ar-

gues that the awarding of maintenance-in-gross was contrary to the court's findings of facts. The court's findings specifically stated:

That petitioner is capable of supporting herself through appropriate employment together *with* the award of property as set for hereafter and is not therefore in need of periodic maintenance. Further, however, petitioner is in need of maintenance in gross in the amount of $171,000 which may be satisfied by the respondent's payment of a certain obligation of $150,000 principal together with interest thereon at the Home State Bank in Kansas City, Kansas pursuant to a promissory note executed by the parties in May of 1985. Further, respondent has not requested and is not in need of either periodic maintenance or maintenance in gross.

The trial court's judgment is to be sustained unless there is no substantial evidence to support it unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The appellant is right in stating that the trial court erroneously ordered maintenance-in-gross. The findings of the trial court do not support the essential elements required by § 452.335.1(1) and (2), RSMo 1974. Nor does the amount ordered seem to be directly applied to accomplish the purpose of maintenance. *See Brown v. Brown,* 673 S.W.2d 113, 115 (Mo.App.1984).

What the trial court was trying to accomplish was to give the respondent added protection in the event the appellant did not pay the debt to Home State Bank in the amount of $150,000 plus interest. This to be so because the court states that the maintenance-in-gross order may be satisfied by the payment of the loan to Home State Bank within the 90 day period. Since the obligation to pay that note was a joint obligation, the court as a part of the division of marital property, ordered appellant to pay that debt. *See Levis v. Levis,* 713 S.W.2d 561, 565 (Mo.App.1986). Given appellant's propensity to ignore the court's

order, it appears the court was attempting to provide an added measure of protection to respondent.

The primary concern of this court is the correctness of the result and not the route taken. *Walker v. Walker,* 631 S.W.2d 68, 71 (Mo.App.1982). We recognize that debts owed by spouses are not marital property, but they are factors to be considered by the trial court in establishing a fair division of the marital assets. *Oldfield v. Oldfield,* 688 S.W.2d 778, 781 (Mo.App.1985). Further, this court stated in *Brisco v. Brisco,* 713 S.W.2d 586, 592 (Mo.App.1986), that "... although the trial court is not required to allocate debts between the parties, it is a commendable practice to do so because it serves to alleviate future dissention between the parties."

In the present case, it is clear that the intention of the trial court was a fair division of the marital property including a division of the debts. The division of this property was contingent upon the erroneous assumption that the maintenance in gross award would properly secure payment of the $150,000 debt to Home State Bank. Since that is not the case, the overall scheme for the division of marital property has been changed. We, therefore, reverse and remand to give the trial court the option to reconsider its division of marital property, given this court's findings that his order of maintenance in gross was in error.

## II.

The trial court in a dissolution proceeding is not required to make an equal distribution of the marital property. It is only required that the distribution be fair and equitable. *D'Aquila v. D'Aquila,* 715 S.W.2d 318 (Mo.App.1986). The appellant argues that the division of marital property was not just. In support of this contention he alleges (1) the court failed to follow the source of funds rule relative to the Richard Morgan Agency, Inc., (2) that there was no evidence of marital misconduct and (3) that the statutory requirements were not followed.

While the appellant's argument focuses upon whether or not the respondent got a disproportionate share of any enhanced value of the Richard Morgan Agency during the marriage, the record reveals that the division of the marital assets (leaving the Richard Morgan Agency out) was fairly even. The appellant received assets totaling approximately $350,000 and the respondent received assets totaling approximately $309,000. When you add into that the value of the Richard Morgan Agency, appellant has received assets valued in excess of $1,000,000. On its face, it would appear that respondent not appellant has reason to complain. Consequently, appellant is not prejudiced by an error on the part of the trial court in providing exact values and the respondent's contribution for any increases in value as stated in *Winter v. Winter*, 712 S.W.2d 423 (Mo.App.1986). The court did indicate and appellant did not contest the fact that respondent made a substantial contribution in kind to the business.[1] Obviously, the appellant's complaint is really with the distribution of the debt. By our calculations, appellant has been given approximately $292,000 dollars in debt (that figure includes court ordered attorney fees and temporary maintenance but excluded guarantees on bonds related to the business estimated at $525,000). The division of the property including the Richard Morgan Agency, Inc., was just and in accordance with § 452.330 RSMo. (1981).

In appellant's brief he argues that the trial court failed to distribute to either party five acres of Liberty property. It is apparent to us that when the court awarded respondent the home plus 120 acres in Liberty he intended to award the home plus the 125 acres immediately adjoining the home. However, this error can be corrected on remand.

## III.

The final issue challenged by the appellant is the trial court's valuation of the Richard Morgan Agency, Inc. The trial court concluded that based upon the evidence the value was between $650,000 and $1,000,000. The appellant asserts that the court made its determination without sufficient evidence. However, the evidence before the Court was appellant's own financial statements. It appears that appellant is willing to vouch for these financial statements when it results in extending his credit line but questions their accuracy when it would add to the basis for the division of marital property.

The trial court believed that the best evidence of the value of the corporation was shown in its financial statement dated February 1, 1985. This was approximately six months before the parties separated. That statement showed retained earnings of approximately $700,000. In addition, it had purchased property in Angola, Indiana, which had a net value of $50,000.00.

The findings of the trial court must be affirmed unless the trial court erroneously applied the law, the judgment is not supported by substantial evidence or the judgment is clearly against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We find the judgment of the trial court to be consistent with the evidence presented.

The judgment of the trial court is reversed and remanded as it relates to the division of marital property in accordance with the directives of this opinion as to point I and affirmed as to points II and III.

All concur.

1. We observe that neither party contested the trial court's characterization of the Richard Morgan Agency, Inc., as nonmarital property.