Stacy Renee NELSON, Respondent,

v.

Mark Eugene NELSON, Appellant.

No. WD 65405.

Missouri Court of Appeals,
Western District.

July 11, 2006.

Tammy J. Glick, Platte City, MO, for Respondent.

Rob A. Redman, Kansas City, MO, for Appellant.

Before EDWIN H. SMITH, C.J., and NEWTON and HOLLIGER, JJ.

EDWIN H. SMITH, Chief Judge.

Mark Eugene Nelson appeals the judgment of the Circuit Court of Platte County dissolving his marriage to the respondent, Stacy Renee Nelson, with respect to the court's: (1) division of marital property; (2) award of physical custody of the parties' two unemancipated, minor children; and, (3) award of child support.

The appellant raises five points on appeal. In Point I, he claims that the trial court erred in finding, in its division of the parties' marital property, that Mark's Power Wash, marital property that was awarded to the appellant, had a fair market value (FMV) of $62,060 because it was not supported by the record in that the appellant "testified at trial that the value of his sole proprietorship 'Marks [sic] Power Wash' was zero dollars." In Point II, he claims that the trial court erred in finding, in its division of the parties' marital property, that the FMV of the parties' residence was $110,000 because there is nothing in the record from which the trial court could reasonably infer that the FMV of the parties' residence was $110,000, "at the time the court executed the Judgment Decree of Dissolution of Marriage," which is, by law, the requisite time frame. In Point III, he claims that the trial court erred in awarding the respondent child support of $840 per month, as calculated pursuant to Civil Procedure Form 14, based on the imputation of $3,000 in gross monthly income to the appellant, because there was no evidence in the record from which the trial court could have found, as required for the imputation of income in determining child support, that he was purposefully unemployed or underemployed. In Point IV, he claims that the trial court erred in awarding the respondent child support of $840 per month, as calculated pursuant to Form 14, because its calculation included, as "extraordinary child rearing costs," $763 a month in tuition for the parties' children to attend Life Christian Academy, which was not supported by the record. In Point V, he claims:

> The trial court erred in granting sole custody of the two minor children born of the part[ies'] marriage to appellee subject to appellant's parenting time because the trial court's decision was against the weight of the evidence, not supported by substantial evidence and the court misapplied the law in that the trial court failed to consider all relevant statutory factors in making its decision to award sole custody of the two minor children to appellee.

We affirm, in part, and reverse and remand, in part.

## Facts

The parties were married on November 22, 1985, in Oklahoma City, Oklahoma, and they separated on July 20, 2004. Two children were born of the marriage: Kyle, born February 10, 1995; and, Garrett, born May 19, 1998.

On July 22, 2004, the respondent filed a petition for dissolution of marriage in the Circuit Court of Platte County. The appellant filed his answer and cross-petition on September 20, 2004. The respondent sought sole legal and physical custody of the children, while the appellant sought joint legal custody and sole physical custody. Both parties sought a fair and equitable division of the marital property.

On March 21, 2005, the petitions of the parties were taken up and heard. The trial court entered its judgment dissolving the parties' marriage on April 13, 2005. In the judgment, the respondent was awarded sole legal and physical custody of the parties' children, with visitation to the appellant. As to child support, the appellant was ordered to pay the respondent $841 per month. In calculating its award, the trial court rejected the Form 14 calculations of the parties and did its own. In its Form 14, the trial court found that the appellant had a gross monthly income of $3,000. In its findings, the court indicated that this amount was "imputed." The court's Form 14 included, as extraordinary child rearing costs, $763 in educational expenses for the parties' children to attend a private school, Life Christian Academy. With respect to its division of marital property, the trial court awarded, *inter alia*, the appellant "Mark's Power Wash," which it valued at $62,060. The court awarded, *inter alia*, the respondent the

parties' residence, which it valued at $110,000.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in finding, in its division of the parties' marital property, that Mark's Power Wash had a FMV of $62,060 because it was not supported by the record. Specifically, he claims that the trial court's valuation of Mark's Power Wash was not supported by the record in that he "testified at trial that the value of his sole proprietorship 'Marks [*sic* ] Power Wash' was zero dollars."

We are to affirm the trial court's division of marital property, unless it is improper under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. *banc* 1976), or it constitutes an abuse of discretion. *Sullivan v. Sullivan*, 159 S.W.3d 529, 534 (Mo.App. 2005). Hence, we review first to determine whether the trial court's division of marital property is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. And, if it passes muster, under *Murphy v. Carron*, we then review for an abuse of discretion. In our review, we are to presume that the trial court's division of property was correctly decided. *Id.* The appellant has the burden of overcoming that presumption. *Id.* In our review, we are to view the evidence in the light most favorable to the trial court's decree and are to disregard any evidence to the contrary. *Thill v. Thill*, 26 S.W.3d 199, 203 (Mo.App.2000).

Section 452.330,[1] which governs the division of property in a dissolution proceeding, sets forth a two-step process that is to be followed by the trial court: (1) the court must first set aside to each

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

spouse his or her non-marital property; and (2) then divide the marital property and debts in such proportions as the court deems just. *Sullivan*, 159 S.W.3d at 534. The division of marital property need not be equal, but must be fair and equitable given the circumstances of the case. *Id.* Section 452.330.1 provides, in pertinent part, that in fashioning a fair and equitable division of marital property, the trial court is required to consider all relevant factors, including:

> (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

> (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

> (3) The value of the nonmarital property set apart to each spouse;

> (4) The conduct of the parties during the marriage; and

> (5) Custodial arrangements for minor children.

The five statutory factors of § 452.330.1 are not exclusive, and there is no formula determining the weight to be given to the factors in dividing the marital property. *Sullivan*, 159 S.W.3d at 535. Although the trial court is not expressly required to assign values to marital property, "evidence from which the value of the marital property can be determined must appear." *Id.* (*quoting Spauldin v. Spauldin*, 945 S.W.2d 665, 669 (Mo.App.1997)). Thus, a trial court is "prohibited from entering a valuation of marital property not supported by the evidence at trial, but [it], nevertheless, enjoys broad discretion in valuing marital property." *Id.* (*quoting Farley v. Farley*, 51 S.W.3d 159, 164 (Mo.

App.2001)). The parties bear an equal burden to present evidence as to the value of marital property. *Id.*

The object of any valuation of a business is, of course, to determine its FMV. *Thill*, 26 S.W.3d at 203. " 'Fair market value' is the 'price which the property in question would bring when offered for sale by one willing, but not obliged to sell it, and it is bought by one willing to purchase it, but who is not compelled to do so.' " *Shelby v. Shelby*, 130 S.W.3d 674, 684 (Mo.App.2004) (citations omitted). No one formula or method of determining value is binding or conclusive. *Thill*, 26 S.W.3d at 203. The judicial determination of the FMV of marital property must be an informed judgment, but is not susceptible to determination by any precise mathematical determination. *Id.* Hence, the trial court can accept the opinion of one expert as to the value over another and can prefer one method of valuation over competing methods based on the particular facts of the case and the circumstances of the corporate entity involved. *Id.*

The appellant claims, in this Point Relied On (PRO), that the trial court erred in finding that Mark's Power Wash had a FMV of $62,060 in that he "testified at trial that the value of his sole proprietorship 'Marks [*sic*] Power Wash' was zero dollars." In so claiming, the appellant misunderstands our review. The fact that he testified in a manner that was contrary to the trial court's decision is irrelevant under our standard of review. *Thill*, 26 S.W.3d at 203. The trial court was free to believe or disbelieve all, part or none of the appellant's testimony as to the FMV of Mark's Power Wash. *Id.* In finding as it did, that it had a FMV of $62,060, the trial court obviously disbelieved the appellant's testimony that it had a FMV of zero.

The respondent testified at trial that Mark's Power Wash had a FMV of

$62,060. She based her valuation on a statement of assets and liabilities the parties submitted to secure a bank loan in July of 2004. This statement indicated that Mark's Power Wash had assets of $76,500 and liabilities of $14,440, for a net worth of $62,060. The statement was offered by the respondent and admitted into evidence. The trial court was free to use the financial statement as evidence of the FMV of Mark's Power Wash. *See Morgan v. Morgan,* 755 S.W.2d 737, 741 (Mo.App. 1988). If believed, this evidence alone was sufficient for the trial court to find that Mark's Power Wash had a FMV of $62,060. *See id.*

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in finding, in its division of the parties' marital property, that the FMV of the parties' residence, which was awarded to the respondent, was $110,000 because there was no evidence in the record from which the trial court could have reasonably inferred that the FMV of the parties' residence was $110,000, "at the time the court executed the Judgment Decree of Dissolution of Marriage," the requisite time frame for valuing marital property. Specifically, he claims that the record does not support the trial court's finding that the parties' residence had a fair market value of $110,000, at the time of judgment, in that it was undisputed that the most recent appraisal of the house placed its FMV at $125,000. Our standard of review in this point is the same as in Point I, *supra.*

At trial, the respondent testified that the parties' residence had a FMV of $86,000. She based her valuation on a refinancing appraisal done by Fannie Mae in 2001, which was offered and admitted into evidence. The appellant testified that the parties' residence had a FMV of $125,000, which was based on an appraisal prepared by Fitch Appraisals, L.L.C., in March of 2005, appraising the property at $125,000. The appellant contends that because the FMV of marital property, for purposes of division in a dissolution proceeding, must be determined at the time of judgment, the trial court "should have placed a value of $125,000 on the property as the appraisal done by Fitch Associates, L.L.C. was the latest evidence the court had to determine the value of the property." In other words, he is contending that the Fannie Mae appraisal of 2001 was too remote in time to be relevant in determining the FMV of the parties' residence at the time of judgment, such that the trial court, in determining the FMV of the residence, was duty-bound to accept the value established by the appraisal done by Fitch Appraisals, L.L.C., $125,000. We disagree.

The owners of a residence are generally competent to testify as to their opinion of its fair market value. *In re Marriage of Canady,* 180 S.W.3d 534, 537 (Mo.App.2006). However, when the owners testify to two different values, the trial court is not bound to accept either estimate as exact. *Davis v. Davis,* 107 S.W.3d 425, 430 (Mo.App.2003). The trial court is free to make its own determination of the fair market value of the property, but is prohibited from finding a fair market value that is not supported by the evidence. *Farley v. Farley,* 51 S.W.3d 159, 164 (Mo. App.2001). So long as the trial court's valuation falls into a range established by the evidence at trial, an appellate court will not disturb the court's valuation. *Canady,* 180 S.W.3d at 537; *Booth v. Greene,* 75 S.W.3d 864, 868 (Mo.App.2002). However, the valuation must be reasonably proximate to the date the division is to be effective. *In re Marriage of Below,* 8 S.W.3d 233, 236 (Mo.App.1999).

In claiming as he does in this point, as to the competing appraisals, the appellant ignores the fact that the respondent testified that, in her opinion, the parties' residence had a FMV of $86,000. This was competent evidence for the trial court to consider in establishing the FMV of the parties' residence. Hence, viewing the evidence in a light most favorable to the trial court's finding, that the parties' residence had a FMV of $110,000, the record would reflect that, at a minimum, the parties' residence had a FMV of $86,000. As such, given the appellant's evidence, specifically, the appraisal of $125,000, which he contends was the FMV that the trial court should have found, the record would support a FMV range of $86,000 to $125,000 for the parties' residence. The FMV found by the trial court, $110,000, falls within that range. Hence, we cannot say that the FMV found by the trial court for the parties' residence was not supported by the record or was an abuse of discretion.

Point denied.

### III.

In Point III, the appellant claims that the trial court erred in awarding the respondent child support of $840 per month, as calculated pursuant to Form 14, based on the imputation of $3,000 in gross monthly income to the appellant, because there was no evidence in the record from which the trial court could have found, as required for the imputation of income in determining child support, that he was purposefully unemployed or underemployed. We disagree.

In determining an award of child support in any proceeding, § 452.340.8 and Rule 88.01 [2] require the trial court to follow the two-step procedure set forth in

Woolridge v. Woolridge, 915 S.W.2d 372, 379 (Mo.App.1996), which was approved by the Missouri Supreme Court in Neal v. Neal, 941 S.W.2d 501, 504 (Mo. banc 1997), and Peniston v. Peniston, 161 S.W.3d 428, 433 (Mo.App.2005). In the first step, the trial court must determine and find for the record the presumed correct child support amount (PCSA) in accordance with Civil Procedure Form 14. Peniston, 161 S.W.3d at 433. "Step one is a mathematical calculation the mandatory use of which insures that the child support guidelines will be considered in every case as mandated in § 452.340.7 and Rule 88.01." Woolridge, 915 S.W.2d at 379. The required PCSA determination and finding can be done by the trial court's either accepting a Form 14 PCSA calculation of one of the parties or rejecting the parties' calculations and doing its own. Peniston, 161 S.W.3d at 433. The trial court can do its own Form 14 PCSA calculation by either completing a Form 14 worksheet and making it a part of the record, or by articulating on the record how it calculated its Form 14 PCSA. Id.

The trial court must reject a party's Form 14 PCSA calculation if: "1) an item is incorrectly included in the calculation; 2) an amount of an item included in the calculation is incorrect; or, 3) the mathematical calculation is incorrect." Woolridge, 915 S.W.2d at 378.

The Form 14 worksheet and its directions for completion mandate which items are to be considered in the calculation and constitute a 'formula' for determining the presumed correct child support amount as envisioned by § 452.340.7 and Rule 88.01. And, although Rule 88.01 leaves it to the court

2. All rule references are to the Missouri Rules of Civil Procedure (2005), unless otherwise

indicated.

to determine whether a Form 14 item should be included in a Form 14 calculation under a given factual situation and the correct amount of the item to be included, the 'formula' to be employed and the factors to be considered in calculating the presumed correct child support amount is not discretionary. As a consequence, in determining whether to 'reject' a Form 14 amount as not being correctly calculated, the trial court only considers Form 14 worksheet factors, the items which are properly included in the calculation and the correct amount of each, and does not take into consideration non-Form 14 factors. In doing so, the court is to be guided by the worksheet's directions for completion and comments for use, and the evidence in the case.

*Id.* at 379 (citations omitted). The amount of child support determined by the trial court, pursuant to Form 14, is presumed to be the correct amount of child support to award and must be awarded, unless in the second step of the *Woolridge* procedure, the trial court, after considering all relevant factors, determines that the PCSA, found by the court, is unjust or inappropriate. *Id.* "Step two permits the trial court to exercise its broad and sound discretion in the final determination of child support awards." *Id.*

Given the mandated use of the *Woolridge* procedure, in determining awards of child support, our review of an award of child support is essentially one of the trial court's application of the procedure, first applying the standard enunciated in *Murphy v. Carron*, 536 S.W.2d at 32. Hence, in reviewing an award of child support, we review the award, in light of the trial court's application of the *Woolridge* procedure, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and

does not erroneously declare or apply the law. *See id.* After reviewing and determining that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, as to both steps one and two, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation. *See id.*

As to the trial court's application of the *Woolridge* procedure in this case, the record reflects that it rejected the Form 14 calculations of the parties as being incorrect. Having done so, the trial court did its own Form 14 calculation by completing its own Form 14 worksheet and making it a part of the record. In its Form 14, the trial court listed the appellant's gross monthly income on Line 1 as $3,000. Using this amount in its calculations, the trial court found that the PCSA was $864 per month, which the court did not rebut as being unjust and inappropriate. In its findings of facts and conclusions of law, the court found as to the appellant's gross monthly income: "[Appellant] is self-employed at Mark's Power Wash and a monthly income is *imputed* to him at Three Thousand Dollars ($3,000)." (Emphasis added.) Hence, the appellant is claiming that the amount of an item in the court's Form 14 calculation of the PCSA is incorrect in that it was not supported by the record, specifically, that the record would not support the imputation of income to the appellant in the amount of $3,000, which is a *Woolridge* "rejection" issue to be reviewed pursuant to *Murphy v. Carron.*

It is well settled in the law that a parent will not be permitted to escape his responsibility to support his children by deliberately limiting his work in order to reduce income. To prevent a parent from avoiding his responsibility to support his children, a trial court

may, in proper circumstances, impute income to the parent in determining the court's child support award, based on what the parent could earn by using his best efforts. "However, it is axiomatic that there must be evidence to support a finding that the parent is deliberately limiting his or her work to reduce income before it is appropriate to impute income." In other words, "[c]ourts should not impute income where the record does not establish an attempt to evade parental responsibilities." What constitutes appropriate circumstances to impute income will depend on the facts of the individual case and are to be determined on a case-by-case basis.

Line 1: Gross Income of Form No. 14, DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, provides, in pertinent part, that income may be imputed "[i]f a parent is unemployed or found to be underemployed." Proper circumstances for imputing income, in determining child support, include both voluntary and involuntary reductions of income by a parent's being unemployed or underemployed. Imputation of income is proper where a parent has voluntarily reduced his or her income without justification. The most common scenario for voluntary reduction of income without justification is where a parent deliberately quits work to reduce his or her child support. Imputation of income is also appropriate where the parent voluntarily reduces his or her income with justification, but only if the evidence shows that the parent had failed to use his or her best efforts to obtain new employment. Likewise, an imputation of income is proper on that same showing where a parent has had his or her income involuntarily reduced, which would include termination of employment.

*Peniston,* 161 S.W.3d at 433–34 (citations omitted).

The trial court, by expressly finding that the entire amount of the appellant's gross monthly income amount, $3,000, used by the court in its Form 14 PCSA calculation, was imputed to the appellant, necessarily had to have concluded that he was unemployed, as opposed to being underemployed. However, the trial court expressly found that he was "self-employed." Moreover, both the appellant's evidence and the respondent's was that he was, in fact, employed. Although the parties disagreed at trial as to the amount the appellant earned each month in gross monthly income, there was no disagreement over the fact that he was employed.

The appellant testified that he was self-employed at Mark's Power Wash and that his gross monthly income was $1,275.49. In addition, he introduced his income tax returns for the years 1999 through 2003; however, they were not included in the record on appeal. The respondent testified at trial that the appellant's gross monthly income was $4,227 per month, the amount which she included in her Form 14 calculation. She never requested the trial court to impute income to the appellant. Hence, the record clearly does not support the trial court's imputing the entire amount of the appellant's gross monthly income in its Form 14 PCSA calculation as if he were unemployed, as the court's findings would reflect.

Even if we were to speculate, and we cannot under our standard of review, *Loumiet v. Loumiet,* 103 S.W.3d 332, 345 (Mo.App.2003), that the trial court, in finding that: "[Appellant] is self-employed at Mark's Power Wash and a monthly income is *imputed* to him at Three Thousand Dollars ($3,000)[,]" (emphasis added), simply misspoke and did not mean to find that the

entire $3,000 was imputed, we would still have no other recourse than to reverse and remand the issue. This is so in that, even under our standard of review, that we are to view the evidence in the light most favorable to the trial court's decision, given the record and the issue presented, we could not conduct meaningful appellate review. This is so in that even assuming, *arguendo*, that the trial court misspoke in finding that it was imputing to the appellant the entire amount of gross monthly income, which it included in its Form 14 calculation, $3,000, we have no way of knowing from the record what the court found was the appellant's earned income from his employment to determine the amount that was imputed to then determine if the record supported such an imputation. Likewise, there is the possibility that the trial court, in finding as it did, did not intend to use the term "imputed" in the technical sense, but was simply trying to indicate that it was compromising the two figures that the parties were suggesting for the appellant's gross monthly income from his employment. But, again, to so conclude would require us to speculate, which we cannot do.

Because the trial court's calculation of the Form 14 PCSA was incorrect, in that it included imputed gross monthly income of $3,000 to the appellant, which was not supported by the record, the court's award of child support to the respondent must be reversed and the issue remanded to the trial court for further consideration. On remand, the trial court is to recalculate its child support award, in accordance with the *Woolridge* procedure and Form 14, making specific findings with respect to how it arrives at the amount of the appellant's gross monthly income.

### IV.

In Point IV, the appellant claims that the trial court erred in awarding the respondent child support of $840 per month, as calculated pursuant to Form 14, because its calculation included, as "extraordinary child rearing costs," $763 a month in tuition for the parties' children to attend Life Christian Academy, which was not supported by the record. Specifically, in his PRO, he claims that the inclusion of $763 per month for secondary educational expenses was in error in that the record was insufficient to prove that it was in the children's best interest to attend Life Christian Academy. The appellant does not claim, in his PRO, that the amount, $763 per month, was not supported by the record.

As noted, *supra*, as to the *Woolridge* procedure, the record here reflects that the trial court rejected the Form 14 calculations of the parties and did its own. In the respondent's Form 14, she included $563 as extraordinary child rearing costs. The respondent testified that this amount was for the parties' children to attend private school at Life Christian Academy. This same item of extraordinary child rearing costs, in the amount of $763, was included in the trial court's Form 14 at Line 6e. The appellant claims that the inclusion of this amount in the trial court's Form 14 calculation was error because there was no evidence that it was in the children's best interests to attend Life Christian Academy.

Form 14, Line 6e, provides for the inclusion of "extraordinary child rearing costs" in determining the PCSA. With respect to such costs, the accompanying comment provides, in pertinent part:

Post-secondary educational expenses and private or parochial elementary, middle and high school expenses are not included in the schedule of basic child support obligations; therefore, these expenses may be included in Form No. 14

as an 'other extraordinary child-rearing cost' *if the parents agree or the court* orders that the parents contribute to payment of these expenses.

'Other extraordinary child-rearing costs' may include, but are not limited to, the cost of tutoring sessions, special or private elementary and secondary schooling to meet the particular educational needs of a child, camps, lessons, travel or other activities intended to enhance the athletic, social or cultural development of a child.

An order may include the cost of tuition, room and board, books, fees and other reasonable and necessary expenses.

Form 14, Line 6e, *Comment A* (emphasis added). Accordingly, private educational expenses can be included in the Form 14 PCSA calculation if the parents agree or the trial court orders it. And, while, generally, our courts have deferred to the judgment of the custodial parent as to decisions concerning private education, *Nelson v. Nelson,* 25 S.W.3d 511, 523 (Mo. App.2000), that deference is not without limitation. The test that must be satisfied for including private educational expenses in the trial court's award of child support, in accordance with Form 14, when the parents do not agree on this issue, is whether private education will meet the particular educational needs of the parties' child or children. *Engeman v. Engeman,* 123 S.W.3d 227, 239 (Mo.App.2003); *McCandless–Glimcher v. Glimcher,* 73 S.W.3d 68, 73–74 (Mo.App.2002).

At trial, the respondent testified, as follows, concerning why she enrolled the parties' children in the Life Christian Academy:

Kyle was moved to Life Christian Academy solely because of the attention deficit issue. Class size being much smaller he could get the attention that he needed.

He had 25 kids in kindergarten, which he was singled out and stuck on the side of the room. They didn't have to deal with him. He was sent to the office most of the time. And Kindergarten should be fun. It was the worst year that we had.

And in 1st Grade, we put him in Life Christian Academy, night and day. And he wasn't on medication at that time. He just got the attention. He had a class size, at that time, I believe it was 16.

. . . .

Kyle is an A Honor Roll student for 3rd Grade, all of 3rd Grade, which was wonderful. And Garrett's done very well for 1st Grade.

In addition, the respondent called Alicia Beckmon, a child therapist who was counseling Kyle for socialization issues and Garrett for anger management, testified that, based on her observations, it would be in the children's best interests to remain in private schooling. The trial court was free to believe this testimony, *Nelson,* 25 S.W.3d at 523, which was sufficient to demonstrate that private education would meet the particular educational needs of the parties' children. As such, paying proper deference to the judgment of the respondent, as the custodial parent, the record supported the trial court's decision to include in its Form 14 PCSA calculation, as an extraordinary child rearing cost, the cost of the parties' children remaining in private schooling at the Life Christian Academy.

Point denied.

**V.**

 In Point V, the appellant claims that the trial court erred:

in granting sole custody of the two minor children born of the part[ies'] mar-

riage to appellee subject to appellant's parenting time because the trial court's decision was against the weight of the evidence, not supported by substantial evidence and the court misapplied the law in that the trial court failed to consider all relevant statutory factors in making its decision to award sole custody of the two minor children to appellee.

Before attempting to address the merits of the appellant's claim of error, we must first address the obvious deficiencies of his PRO in this point. *Finnical v. Finnical,* 81 S.W.3d 554, 557–58 (Mo.App.2002). The appellant's PRO in this point fails to comply with Rule 84.04(d), governing proper PROs.

Rule 84.04(d)(1) provides:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [identify the challenged ruling or action], because [state the legal reasons for the claim of reversible error], in that [explain why the legal reasons, in the context of the case, support the claim of reversible error]."

Thus, the rule requires that a proper PRO must: (1) identify the ruling or action of the trial court that is being challenged on appeal; (2) state the legal reason or reasons for the claim of reversible error; and (3) explain in summary fashion why, in the context of the case, the legal reason or reasons support the claim of reversible error. *Johnson v. Mo. Dep't of Health*

*Senior Servs.,* 174 S.W.3d 568, 587 (Mo. App.2005). Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made. *Id.* The failure to comply with Rule 84.04(d) warrants dismissal of the appeal. *Id.*

The appellant's PRO in this point fails to explain in summary fashion why, in the context of this case, the legal reason or reasons support the claim of reversible error. His point is nothing more than an abstract regurgitation of the *Murphy v. Carron* standard of review, which is unacceptable in satisfying the requirements of Rule 84.04(d). *Id.* In essence, all he claims is that the trial court was wrong. The appellant's failure to comply with Rule 84.04(d) is sufficient reason to dismiss the appellant's claim of error. *Id.* It is not proper for the appellate court to speculate as to the point being raised by the appellant and the supporting legal justification and circumstances. *Sullivan,* 159 S.W.3d at 537. To do so, would cast this court in the role of an advocate for the appellant, which is prohibited. *Id.* Thus, we have no choice but to dismiss this point.

Point dismissed.

## Conclusion

The judgment of the Circuit Court of Platte County, dissolving the parties' marriage, is affirmed, except with respect to the court's award of child support, which is reversed and the case remanded to the court for reconsideration of its award in accordance with this opinion.

NEWTON and HOLLIGER, JJ., concur.