**Jill Suzanne ROSITO, Appellant,**

v.

**Mario Estuardo ROSITO, Respondent.**

**No. WD 68689.**

Missouri Court of Appeals,
Western District.

Aug. 5, 2008.

---

Regina K. Bass, Esq., Leawood, KS, D. Adam Leatherwood, Esq., Co–Counsel, Kansas City, MO, for appellant.

William H. Reynolds, Esq., Kansas City, MO, for respondent.

Before Div IV: HOWARD, C.J., LOWENSTEIN and WELSH, JJ.

HAROLD L. LOWENSTEIN, Judge.

### FACTS

Appellant Jill Rosito (Mother) and Respondent Mario Rosito (Father) were married in Topeka, Kansas, in the summer of 2000. The couple lived briefly in Kansas City, where Mother had spent most of her adult life. In the fall of 2000, they relocated to Guatemala City in Guatemala, Father's birthplace. When they had lived in Guatemala for a little less than one year, the couple's daughter (Child) was born. Mother and Father began experiencing

marital difficulties soon after the relocation. In January 2003, the family returned to the United States on a vacation to visit Mother's family in Kansas. While they were in Kansas, Mother filed for divorce.

In October 2003, a Kansas divorce decree awarded joint legal custody to the parents and described the physical custody arrangement as "the primary residency of such child being with [Mother], subject to parenting time of [Father]." Mother was awarded $327 per month in child support, and Father was required to provide health insurance for Child. The judgment incorporated a parenting agreement which provided that Father's parenting time would take place in Topeka and that Father would surrender his passport during such visits until Child reached the age of three.

Later in 2003, Mother and Child moved to Jackson County, Missouri. On August 6, 2006, the Jackson County Circuit Court registered the Kansas divorce decree. Mother then brought this motion to modify with respect to custody and child support. She appeals from the modification judgment entered in June of 2007.

In her motion to modify, Mother sought sole legal custody, increased child support, and restrictions on Father's visitation so that he could not take Child outside the country, could not exercise periods of visitation longer than one week at a time until after Child's fifth birthday, and could not remove Child from school for visitation purposes. Father filed a counter motion to modify, requesting joint legal and joint physical custody, increased parenting time, and attorney fees.

The judgment under review preserved joint legal custody and awarded joint physical custody to the parties, placing Child with Mother except for such times as were designated for Father. Under this judgment, Father was allowed significantly more time with Child, including specific multi-week periods and one-half of Child's summer breaks between school semesters. Also, Father was allowed to take Child to Guatemala during these periods. The court increased Father's child support obligation, requiring him to pay $550 per month.

Mother brings six points on appeal. She asserts that the trial court erred in (1) awarding joint legal and joint physical custody and allowing Father to take Child from the country without making findings pursuant to section 452.375, RSMo; (2) rejecting each party's custody suggestion without making findings pursuant to section 452.375, RSMo; (3) awarding only $550 per month in child support; (4) arbitrarily choosing a retroactive date for enforcement of the new child support award; (5) allowing Father to take Child to Guatemala where the Hague Convention on the Civil Aspects of International Child Abduction may not be fully enforceable; and (6) allowing Father to travel internationally with Child even though the evidence showed that Child did not speak Spanish and that long periods of time spent with Father would be problematic.

## STANDARD OF REVIEW

The standard of review in a custody modification case is provided by *Murphy v. Carron*, 536 S.W.2d 30 (1976). *In re McIntire*, 33 S.W.3d 565, 568 (Mo.App. 2000). The appellate court "will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.*

## POINTS I & II

In her first and second points, Mother asserts that the trial court erred in failing to make findings as to the factors

from section 452.375 on which the court based its custody decision and its decision to reject the proposed custodial arrangements suggested by the parties. Father counters that there was no change in the custodial arrangement but merely a change in "parenting time" and, therefore, findings are not required under section 452.375.

 Section 452.375 provides that, in cases where the parties have not agreed to a custodial arrangement or the court determines that such arrangement is not in the best interests of the child, the court must make written findings based on the public policy statement of subsection 452.375.4 and the factors found in subsection 452.375.2. § 452.375.6, RSMo Cum. Supp.2007. The court must also make such findings when it rejects a custodial arrangement proposed by a party. *Id.* In either case, the findings must detail the "specific relevant factors" that support the court's decision. *Id.* Subsection 452.375.4 notes that it is the policy of this state to promote "frequent, continuing, and meaningful contact with both parents" and to encourage both parents to participate in decisions affecting their child.[1] Subsection 452.375.2 provides that,

> The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation

---

1. Subsection 452.375.4 states,
 The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to partici-

pate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

Although the trial court does not need to discuss factors that are not relevant to the particular case, it is required to discuss those that are. *Davis v. Schmidt*, 210 S.W.3d 494, 503 (Mo.App.2007). If the required findings are not made, this court must reverse the custody award and remand to the trial court for its entry of such findings. *Id.*

■ In contrast to Father's suggestion, subsection 452.375.6 does not condition its requirement of findings on whether a modification court actually makes changes to the prior custody award. " 'So long as any issue or sub-issue of custody is subject to contest between the parties and resolution by the court, written findings that include discussion of the applicable factors from subsection 452.375.2 are required.' " *Davis*, 210 S.W.3d at 503 (*quoting Buchanan v. Buchanan*, 167 S.W.3d 698, 701–02 (Mo. banc 2005)). In this case, Mother sought sole legal custody, and joint physical custody and Father sought joint legal and joint physical custody. Clearly, the parties did not agree to a custodial arrangement. Furthermore, the court rejected custodial arrangements submitted by both parents.

Father's argument that the required findings of Section 452.375 have not been triggered since all that was changed after the motion to modify was visitation, and, more particularly, the time, place, and arrangements thereof is arguable, but not well taken. The Kansas decree indicates that physical custody is solely with Mother. In this suit, Father asked for joint

physical custody and in that effort he was successful. This court in *Buchanan*, stated that custody and custodial arrangements of children in dissolution actions is one of the most important and difficult decisions the judge has to decide. 167 S.W.3d at 702. This interpretation carries over to motions to modify, and in a case such as this one, where the parties had not agreed to the custodial arrangements and were not just solely seeking a change of visitation. *Speer v. Colon*, 155 S.W.3d 60–1 (Mo. banc 2005).

This case is not similar to *Wood v. Wood*, 94 S.W.3d 397 (Mo.App.2003). In *Wood* this court found that in a modification judgment where the trial court expressly found that there had not been a substantial change of circumstances warranting a change of custody, the trial court is not required to reach the issue of best interests and, therefore, § 452.375.6 is not triggered. If § 452.375.6 is not triggered, the findings required by § 452.375.2 are not required.

In this case the trial court specifically found the age of the child, the geographical distance, the lack of contact between father and daughter, the fact that Respondent has no family in Kansas and the opportunity for the child to experience two different cultures were substantial and continuing changes in circumstance such that the best interest of the child require a new parenting plan.

The trial court having found a substantial and continuing change of circumstance has triggered § 452.375.6 and must, based on the public policy stated in § 452.375.4, make findings concerning the eight best interest factors contained in § 452.375.2.

■ It is easy to see why it appeared to the trial court that this was merely a reconfiguration of visitation because of family moves and the Father residing in anoth-

er country. Custody provisions were modified. In such cases, trial courts should, out of an abundance of caution, include findings on the relevant factors of subsection 2 of Section 452.375 in their judgments.

Under section 452.375, the court should have made findings as to the relevant factors making the court's custodial arrangement in the best interests of the child and the relevant factors causing the court to reject the arrangements proffered by the parties. The judgment included no such findings and, therefore, must be remanded for findings.

## POINT III

 In her third point, Mother asserts that the trial court erred in making its $550 child support award in that the court failed to prepare a record of how it calculated the amount of child support and there was no evidence to support the court's decision as to the amount of future child care expenses or the travel expenses associated with custody and visitation arrangements. Mother argues that the presumed correct child support amount of $712 per month should have been awarded.

 Rule 88.01 establishes a two-step procedure for determining child support. *Miller v. Miller*, 239 S.W.3d 636, 638 (Mo.App.2007) (quoting *Reis v. Reis*, 105 S.W.3d 514, 515–16 (Mo.App.2003)). First, the trial court is required to determine and find for the record the presumed correct child support amount (PCSA) calculated with the Form 14 child support calculation worksheet. *Id.* The court can accept or reject the parties' proffered Form 14 calculations. *Nelson v. Nelson*, 195 S.W.3d 502, 509 (Mo.App.2006). If the court does not accept a party's Form 14, it must produce its own calculation by completing Form 14 and making it part of the record or articulating on the record how it

calculated the Form 14 amount. *Id.* The amount determined pursuant to the Form 14 calculations is the presumed correct child support amount. *Id.* at 510. After establishing the PCSA, the court must, as the second step in the procedure, consider whether to rebut the PCSA as being unjust or inappropriate after considering all relevant factors. *Id.; see* § 452.340 (non-exclusive list of relevant factors). ("Unless a request is filed pursuant to Rule 73.01(c), a written finding or a specific finding on the record by the court or administrative agency that the child support amount under a correctly calculated [Form 14], after consideration of all relevant factors, is unjust or inappropriate shall be sufficient in a particular case to rebut the presumption that the amount of child support so calculated is correct.)" Rule 88.01(b).

 In reviewing an award of child support, this court reviews the award with respect to the trial court's application of the two-step procedure, "to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Nelson*, 195 S.W.3d at 510. After determining that the procedure employed by the court passes that standard, this court then reviews the trial court's decision to rebut the Form 14 calculation for abuse of discretion. *Id.*

Mother's claim that the trial court erred procedurally by failing to "prepare a record of how it calculated its child support amount" is without merit. The trial court rejected both parents' proffered Form 14 calculations. The court noted in the judgment that there would be a significant reduction in childcare costs when Child began grade school in August 2008. For this reason, the court prepared a Form 14 calculation to reflect the costs of childcare at the time of the judgment and another to

reflect childcare costs when Child began attending school. The forms used to make these calculations were attached to the judgment. Then, the court rebutted the presumed correct amounts ($712 per month before August 2008, $575 per month after), stating in the judgment that such amounts were unjust and inappropriate because Father was to solely bear the expense of travel to exercise his custody rights. As neither party submitted a request for findings on this issue under Rule 73.01(c), the court was not required to make additional findings regarding the rebuttal of the PCSA. The trial court correctly followed the procedure for awarding child support.

■■■ Mother next challenges the court's determination that Child's school attendance, beginning in August 2008, would cause a reduction in work-related child care costs from $585 to $325 per month as being speculative and unsupported by substantial evidence. However, Mother herself testified to a thirty percent reduction in day care costs once Child begins school. The judgment notes that the amount would be further reduced by the absence of day care costs during periods where Child is in Father's custody. Such periods are set out in the judgment. The court's determination was supported by substantial evidence.

■■■ Finally, Mother argues that the court erred in rebutting the PCSA and entering the $550 amount as the child support award. This decision is reviewed for abuse of discretion. *Nelson,* 195 S.W.3d at 510. The judgment explains that the reason the court departed from the PCSA and awarded a lesser amount was that Father would be responsible for the travel expenses associated with exercising his custody rights. Father testified that a round trip airline ticket would cost, at minimum, $450 to $500. In the parenting plan, the

judgment provides for at least three times per year when Father has custody of Child, making it necessary for him to purchase round-trip airfare for himself and also for Child when such periods are to be spent in Guatemala. The judgment also allows Father to visit Child in the United States if Father gives reasonable notice of his arrival. Father testified that he was spending over $540 per month in travel expenses to visit Child. As the reasonable expense associated with custody and visitation arrangements is a "relevant factor" that the court is instructed to consider in rebutting the PCSA (§§ 452.340.9, 452.340.1(5)), this court cannot say that the trial court abused its discretion in deciding to reduce the child support award on that basis.

## POINT IV

■■■ In her fourth point, Mother challenges the retroactive child support date chosen by the trial court as being arbitrary and unsupported by the record. At trial, Mother requested that the child support award be retroactive to the date she served Father with her motion to modify (she filed her petition on June 28, 2006, and mailed a copy to Father in Guatemala on that day). The court made the child support award retroactive to February 2007. Section 452.340 gives the court discretion to order child support retroactive to the date the petition was filed. *Overstreet v. Overstreet,* 214 S.W.3d 347, 348 (Mo.App.2007). "Although the trial court is not required to use the filing date as the retroactive date, it should be clear from the record that the date chosen by the trial court is not arbitrary." *Id.*

■■■ This court finds nothing in the record to support the trial court's chosen retroactive date. Father attempts to justify the choice of February 2007 by explaining that the parties attended mediation in

March 2007. According to Father, the court likely selected February because, by that time, the parties should have exchanged the information necessary to calculate child support for mediation purposes. Besides being rather speculative, this does not appear to be a sensible reason for choosing a retroactive date. An appellate court need not resort to speculation and conjecture to determine what a trial judge may have had in mind in determining the appropriate date. *Id.* Since the record reveals no reasonable explanation for the trial court's choice, this court finds that the trial court abused its discretion by arbitrarily selecting February 2007 for retroactive enforcement of the child support award.

### POINT V

■ Mother's fifth point suggests that the court erred in finding that the Hague Convention on the Civil Aspects of International Child Abduction [2] (Convention on Abduction) sufficiently protected the best interests of Child and in rejecting her proposed travel restrictions for Father during his periods of custody. The basis of this argument is Mother's assertion that Guatemala is not legally obligated to comply with the Convention on Abduction as regarding the recognition of custody judgments from United States courts because the United States has yet to recognize Guatemala's accession to the Convention on Abduction. However, as Mother admit-

ted in her brief and through counsel at oral argument, the United States did recognize Guatemala's accession to the Convention on Abduction in January 2008. As such, the point is now moot.[3]

### POINT VI

■ Mother's sixth point asserts that the court erred in finding that there was no reason to prevent Father from traveling internationally with Child as that finding was against the weight of the evidence. Specifically, Mother points to evidence that Child does not speak Spanish, has not spent extended periods of time alone with Father, and has a problematic relationship with Father. She also notes a strained relationship between herself and Father. "A 'great deal of caution should be exercised in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and only then upon a firm belief that the judgment of the trial court was incorrect.'" *Parker v. Parker*, 66 S.W.3d 778, 786–87 (Mo.App.2002) (*quoting Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App. 1996)). This court gives due regard to the trial court's opportunity to judge witness credibility. *Kerr v. Louderback*, 35 S.W.3d 511, 513 (Mo.App.2001). Trial judges are better able than appellate courts to assess credibility and other intangibles that are not completely revealed by the record. *Id.*

2. This convention provides an enforcement remedy designed to protect children from abduction and retention across international boundaries by providing a procedure to facilitate their return.

3. Mother also asserts, in her fifth point relied on, that the court's findings that there was no reason to bar Father from traveling out of the country with Child and that Father had forgone prior opportunities to flee the United States with Child were against the weight of the evidence because Father had surrendered

his passports during all prior periods of visitation, making an abduction across international lines impossible. However, Mother makes no attempt to develop or support this contention in her argument section. Issues raised in the points relied on that are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review. *State ex rel. Greene County v. Barnett*, 231 S.W.3d 854, 857–58 (Mo.App.2007).

In support of her argument here, Mother points to her own testimony that Child does not react well to changes in her daily routine and that she misses her mother when away from home for long periods of time. Mother notes an instance where Father had difficulty with Child. She further stresses testimony as to Child's inability to speak Spanish and the strained relationship between the parties due to inconsistent telephone communications.

There were only two witnesses before the trial court, Father and Mother. Mother testified about her fears with respect to Father being allowed to take Child out of the United States during his periods of custody. Father's testimony, apparently credited more highly by the trial court, showed a developing relationship between himself and Child and Father's desire to ensure that Child had contact with his family and culture. Father explained that he had made numerous trips to the United States after the 2003 divorce to visit Child. As Child grew older, she began to spend more time with Father during these visits and stayed nights with Father without difficulty. In 2006, Child and Father traveled to Georgia for ten days to visit Father's family there. Father described the development of an affectionate relationship and stated that he had begun to teach Child to speak Spanish during his visits.

Father also testified that he had agreed to surrender his passport (as was reflected in and ordered by the Kansas judgment) when visiting child in the past to ease Mother's concerns about him absconding with Child and that he had never taken actions to prepare for Child to travel to Guatemala as Mother had rejected all suggestions of such a visit. He stated that he recognized that the United States is Child's home but that he wanted her to visit Guatemala, the country of her birth. As for Mother's concern that Child would,

on a visit to Guatemala, be trapped in an environment where she could not communicate with those around her, Father testified that he would take vacation during part of her summer visits and that, when he could not be with Child, his mother would be able to watch her. The Child's grandmother speaks English as she is employed as an English teacher.

Since Father's testimony addressed the concerns raised by Mother's testimony as to whether it would be dangerous to allow Father to take Child to Guatemala during his periods of custody, the trial court's decision was necessarily based on a credibility determination. Considering the trial court's superior ability to assess the credibility of witnesses, the record does not leave this court with the firm belief that the judgment of the trial court was incorrect. The finding was not against the weight of the evidence.

### CONCLUSION

The case is remanded to the trial court. On remand, the trial court shall enter findings compliant with subsection 452.375.6. With respect to child support, the trial court shall provide for the record the reasons supporting its decision to make the award retroactive to February 2007. If the court determines that the February 2007 date cannot be supported, it may reconsider the date and enter one that is supported by the record.

All Concur.