Justin Scott BUCHANAN, Appellant,

v.

Jaclyn Ann BUCHANAN, Respondent.

No. SC 86662.

Supreme Court of Missouri,
En Banc.

July 12, 2005.

Richard L. Schnake, Springfield, MO, for Appellant.

Douglas C. Fredrick, Springfield, MO, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

This is a custody dispute that was heard by a visiting judge in Stone County. Justin Buchanan complains that the visiting judge who heard this case lacked authority. The visiting judge was properly assigned to Stone County by this Court and authorized by local rule to hear this case. Father made no objection to the authority of the judge at the hearing. This constituted father's agreement to the matter being heard by the visiting judge pursuant to local rule. Father also complains that the trial court did not issue written findings in its custody judgment pursuant to section 452.375.6, RSMo 2000.[1] Written

---

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

findings are required by section 452.375.6 if the court must rule on any issue or sub-issue of custody that the parents do not agree upon. This Court reverses the judgment and remands the case.

## I. Introduction

This case was originally assigned to Judge Alan Blankenship, of the 39th Judicial Circuit by the presiding judge, J. Edward Sweeney. Prior to the hearing, Judge Blankenship entered the following in the docket: "Per counsel conflicts provided, case set for 1/2 day hearing on Thursday, September 18, 2003, at 9:00 a.m. Case may be heard by visiting judge Daniel M. Czamanske. Clerk to notify counsel." At no time did presiding Judge Sweeney appoint Judge Czamanske to this particular case.

This Court had temporarily transferred Judge Daniel M. Czamanske to the 39th Judicial Circuit (Stone County) from Platte County for the period of September 15–19, 2003. The transfer order vested in Judge Czamanske "the same powers and responsibilities as a judge of the court or district to which transferred. Such powers and responsibilities shall be confined to designated matters and cases. . . ."

The parties appeared before Judge Czamanske at a dissolution hearing on September 18, 2003, and presented their case. Neither party objected to Judge Czamanske hearing the case. At the hearing, father (Justin Buchanan) and mother (Jaclyn Buchanan) both agreed to joint custody, but they presented differing parenting plans and disagreed on the child's residence. At the very beginning of the hearing, the following exchange occurred:

THE COURT: All right. What are the controverted issues we're going to be hearing this morning?

[Mother's Counsel]: Custody issues.

[Father's Counsel]: One custody issue, Your Honor, regarding the residence for the minor child.

THE COURT: Are there other contested issues other than the custody issue?

[Mother's Counsel]: No, Your Honor.

Judge Czamanske granted joint custody, adopted mother's proposed parenting plan, and assigned mother's address to be used as the child's mailing and educational address. The judgment reads:

The court further finds that the parties are able to cooperate with each other and share the decision-making rights, responsibilities, and authority relating to the health, education, and welfare of said children. The court further finds that the best interests of the said children will be served by granting the care, custody, and control jointly to [Father] and [Mother], as set forth in [Mother's proposed parenting plan] which is attached hereto and incorporated herein by this reference.

. . . .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner and Respondent are awarded joint legal custody, care and control of the minor child of the marriage.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Father and Mother are] hereby designated as the minor joint physical custodians and that [Father] is awarded rights of reasonable visitation with the minor unemancipated children as set forth in [Mother's proposed parenting plan] which is attached hereto and incorporated herein by this reference.

. . . .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Mother's] address shall be designated as the mailing address of the minor children for mailing and educational purposes.

. . . .

## II. Authority of Judge Czamanske

Father complains that neither the Supreme Court nor the presiding judge for the 39th Judicial Circuit specifically assigned Judge Czamanske to this case. There is no dispute that Judge Czamanske is an associate circuit judge for Platte County, Missouri.

Article V, section 6 of the Constitution of the State of Missouri provides this Court the authority to "make temporary transfers of judicial personnel from one court or district to another as the administration of justice requires. . . ." Article V, section 6 further provides that "[a]ny judge shall be eligible to sit temporarily on any court upon assignment by the supreme court or pursuant to supreme court rule." Rule 11.01 of the Missouri Rules of Civil Procedure states:

> This Court may make temporary transfers of judicial personnel from one court or district to another as the administration of justice requires. A judge transferred temporarily by order of this Court shall not be excused from the judicial duties of the court or district to which the transfer is made during the period of the transfer unless excused by the presiding or chief judge of the court to which transfer was ordered or unless excused by the Chief Justice.

Missouri Rule 11.02 states: "A judge or commissioner so transferred, during the period designated, shall have the same powers and responsibilities as a judge of the court or district to which he is transferred."

Local Rule 6.6 of the 39th Judicial Circuit provides: "In the absence of any judge of this circuit, any other circuit or associate circuit judge of this circuit may sit as the judge of the division in which the judge is absent and perform all duties of the absent judge." Local Rule 4.2 of the 39th Judicial Circuit provides, in relevant part:

> Associate circuit judges shall have concurrent jurisdiction in the following cases:
>
> . . . .
>
> 2. All dissolution actions, motions to modify, and proceedings under the Uniform Child Custody Act (UCCJA). . . .
> 5. Any case . . . by agreement of the parties, may be heard by an associate circuit judge within the circuit without necessity of assignment of such case by the presiding judge to the associate circuit judge.

■ Judge Czamanske was transferred by order of this Court to serve in the 39th Judicial Circuit, with all the authority of a judge of that circuit, for the week of September 15–19, 2003. *See City of Kansas City v. Rule*, 673 S.W.2d 21, 24 (Mo. Banc 1984); *Lansing v. Lansing*, 736 S.W.2d 554, 557–58 (Mo.App.1987). Although Judge Blankenship's abbreviated docket entry is not entirely clear, it is apparent that he would not be able to sit on this case as scheduled. In his absence, Judge Czamanske was authorized by local rule 6.6 to sit in his place and perform all of Judge Blankenship's duties regarding this case. Judge Blankenship appears to have contemplated this with his notation that the case "may be heard by visiting judge Daniel M. Czamanske."

■ Local rule 4.2 also authorized Judge Czamanske to hear this case. No objection was made at the hearing regarding Judge Czamanske's authority.[2] By their appearance without objection, the

---

**2.** Judge Czamanske would also have authority as either a judge de facto or de jure. Although the parties agreed to have him hear the case, assuming they did not, "In Missouri a special judge is a judge de facto." *Brinkerhoff–Faris Trust & Savings Co. v. Gaskill*, 356 Mo. 61, 201 S.W.2d 274, 276 (1947) (citations

parties agreed to have Judge Czamanske hear this case. Upon such agreement and per local rule 4.2, no further or specific assignment was necessary for this case to be heard by Judge Czamanske.

## III. Written Findings

■ Father argues that because the parties disagreed about the child's residence and parenting plan, the trial court was required to issue written findings on

those issues.[3] Mother maintains that the parties agreed to a joint custody designation, so no written findings were required.

Section 452.375.6 provides:

If the parties have not agreed to a custodial arrangement ... the court shall include a written finding in the judgment or order based on the public policy in subsection 4[4] of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2[5] of this section detail-

---

omitted). "A claimant's failure to timely object to a de facto judge's conduct of the hearing waives any defect regarding the procedural niceties of her appointment." *Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 598 (Mo. banc 1994).

3. Father did not request findings of fact at the hearing. Section 452.375.6 provides that when the parties are not in agreement on a custody arrangement, "the court shall include a written finding in the judgment or order." As a general rule, in civil cases, Rule 73.01(c) outlines the proper way that this should have been handled. It provides in relevant part:

The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow. All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

The difference between custody cases and ordinary cases is that section 452.375.6 puts the burden on the court to issue written findings instead of on the parties as is the general rule.

4. Section 452.375.4 provides the public policy governing custody decisions in Missouri. It provides:

The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to partici-

pate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

5. Subsection 2 of 452.375 states:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child,

ing the specific relevant factors that made a particular arrangement in the best interest of the child.

. . . .

In *Speer v. Colon*, this Court emphasized the importance of these written findings in custody proceedings:

> Because the parties had not agreed to the custodial arrangement, the trial court was required to include in its judgment a *written finding* based on the public policy in section 452.375.4 and the factors listed in section 452.375.2(1) to (8) detailing the specific relevant factors that made the chosen arrangement in the best interest of the child.

155 S.W.3d 60, 61 (Mo. banc 2005).

Determining custody and custodial arrangements of children in dissolution actions is one of the most important and most sensitive duties of the court. The legislature has mandated written findings detailing the specific relevant factors that made the chosen arrangement in the best interest of the child. Written findings are necessary unless the parties have "agreed to a custodial arrangement." Section 452.375.6.

Although the parties had agreed that father and mother should have joint custody, they did not agree on the residence address for the child or on a parenting plan. While these may be sub-issues of custody, they were contested and required the court's resolution. So long as any issue or sub-issue of custody is subject to contest between the parties and resolution by the court, written findings that include discussion of the applicable factors from section 452.375.2 are required. The judg-

then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household mem-

ment is reversed, and the case is remanded.

All concur.

ber who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian. . . .