Christopher L. JONES, Appellant,

v.

Angela C. JONES, Respondent.

No. WD 69213.

Missouri Court of Appeals, Western District.

Feb. 10, 2009.

---

James A. Kessinger, Kansas City, MO, for Appellant.

Matt Chiasson, Kansas City, MO, for Respondent.

Before: JOSEPH M. ELLIS, Presiding Judge, JAMES M. SMART, JR., Judge and ALOK AHUJA, Judge.

JOSEPH M. ELLIS, Judge.

Christopher Jones ("Father" or "Husband") appeals from a judgment dissolving his marriage to Angela Jones ("Mother" or "Wife") and awarding joint legal and physical custody of their two minor children. He contends that the trial court erred in designating Mother's address as the children's for mailing and educational purposes, failing to split the income tax dependency deductions, assigning a value to the marital home that was unsupported by the record, and failing to consider the debts accumulated after the parties separated when distributing the marital assets and debts. For the following reasons, we remand in part, affirm in part, and reverse and remand in part.

Mother and Father were married on July 4, 2001, in Eureka Springs, Arkansas. They had two children together, Cassidy Faye Jones, born August 20, 2002, and Caleb William Jones, born May 24, 2005. Mother also has two teenaged children from a prior marriage, Ashley and Angela. In January 2006, Mother and Father purchased a home in Liberty, Missouri, where they lived together with all of the children. It appears that the family lived in North Kansas City prior to that time, as that is where Mother's older children attended school before they moved to Liberty.

Father filed a petition for dissolution of marriage on October 23, 2006, but he and Mother continued to live together for several months. In early December 2006, Mother and Father had a confrontation because Mother no longer wanted Cassidy and Caleb to go to the daycare that they had been attending since August 2006. Mother moved out with the children shortly thereafter. After living for a short time in a rental property in North Kansas City, then with her mother in Kansas City, Kansas, Mother moved into another house in North Kansas City on January 24, 2007, and she continued to live there with the children at the time of trial.

The parties attended three mediation sessions in January 2007 and came to an agreement on most issues. They arranged a substantially equal split of parenting time to work around both of their work schedules, which they continued to follow through the time of trial. They agreed that Father would pay child support in the amount of $613 per month, which was the presumed amount on the Form 14, and that they would split the child dependency income tax deductions. They did not agree on which school district the children would attend, Liberty or North Kansas City, and they each presented evidence as to the convenience and quality of each

school district and their prior actions concerning Cassidy's schooling. The parties requested the court to order the parenting plan that they had agreed upon in mediation, with a few minor changes; order Father to pay to Mother the presumed child support amount of $613 per month and split the child dependency tax deductions; and designate whose address would be the children's for educational and mailing purposes in order to determine which school district the children would attend.

The parties divided up their personal belongings and household furnishings in a substantially equal manner, but they disagreed on whether several of their vehicles were marital or nonmarital and the value of the vehicles. They agreed that Father should be awarded the marital home, which was the primary asset in the marital estate, and that he should make an equalization payment to Mother, but they disagreed on the value of the home and the amount of the equalization payment. The parties had accumulated debt, some of which was incurred after the date of separation. They requested the court to determine the value of the vehicles and the marital home and to divide the marital property and debts in a just and equitable manner.

The case was tried to a commissioner on October 24, 2007, and the commissioner announced her findings on the record at the conclusion of trial. The commissioner subsequently issued her Judgment, Findings and Recommendations, and a judge approved and adopted them in full. The court dissolved the marriage, awarded Mother and Father joint custody of the children, approved the parenting plan that the parties had agreed upon in mediation with two minor changes, and designated Mother's address as the children's for educational and mailing purposes. The court also approved the child support amount

agreed to by the parties, but it declined to split the child dependency tax deduction. Finally, the court assigned values to the marital assets and debts, awarded the marital home to Father and split the other assets and debts, and ordered Father to pay a $16,813 equalization payment to Mother within 60 days. Father filed a motion for new trial or, in the alternative, to amend the judgment or for a new hearing, which was denied. This appeal follows.

A judgment in a dissolution matter "will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Foraker v. Foraker*, 133 S.W.3d 84, 92 (Mo.App. W.D.2004). We view the evidence in the light most favorable to the decree and disregard all contrary inferences and evidence. *Garrison v. Garrison*, 255 S.W.3d 37, 40 (Mo.App. W.D. 2008). We defer to the trial court's determinations regarding witness credibility. *Foraker*, 133 S.W.3d at 92. "A judgment will not be reversed unless it is against the weight of the evidence and then only with caution and a firm belief that the judgment is wrong." *Hernandez v. Hernandez*, 249 S.W.3d 885, 888 (Mo.App. W.D.2008). "The 'weight of the evidence' refers to the probative value of the evidence and not the quantity of the evidence." *Id.*

Father brings three points on appeal. In his first point, he asserts that the trial court failed to issue statutorily required findings for the relevant best interest factors under § 452.375 [1] before designating Mother's address as the children's for educational and mailing purposes, thereby precluding meaningful appellate review. He relies on *Buchanan v. Buchanan*, 167 S.W.3d 698 (Mo. banc 2005).

Mother counters that the trial court's findings are sufficient because the parties agreed on joint custody and on the majority of the provisions of the parenting plan, including that Mother was to have the children during school hours except for every other Wednesday. She relies on *Strobel v. Strobel*, 219 S.W.3d 295 (Mo. App. W.D.2007).

The trial court awarded Mother and Father joint legal and physical custody and found that the parenting plan that the parties had agreed upon in mediation was in the best interests of the children, with two modifications. The court granted Father's request to change the Monday pickup time from 7:00 p.m. to 6:30 p.m. and Mother's request of one Sunday per month from 9:00 a.m. to 12:00 p.m. The court declined to grant Father's additional requests to change the pickup time on Fridays from 7:00 p.m. to 6:30 p.m. and to prohibit Mother from allowing her daughter to babysit the children.

The court also designated Mother's address as the children's residence for educational and mailing purposes, which meant that the children would be in the North Kansas City school district. The court did not enter any written findings concerning the best interest factors under § 452.375. The judgment states only that the parenting plan proposed by the parties "with the changes outlined above, is in the best interests of the children" and that "consistent with the Parenting Plan . . . , and in the best interests of the children, the children should be placed in the joint legal and joint physical custody of the parties, with [Mother's] address designated for mailing and educational purposes."

In *Buchanan*, the parties agreed that they should have joint custody, but they disagreed on the designation of the child's

1. All statutory citations are to RSMo 2000 unless otherwise noted.

residence and proposed different parenting plans. 167 S.W.3d at 699. The trial court adopted the mother's proposed parenting plan and assigned the mother's address to be used as the child's for educational and mailing purposes. *Id.* The court stated in its judgment that it found that the parties were able to cooperate and share decisions and that "the best interests of the said children will be served by granting the care, custody, and control jointly to [Father] and [Mother], as set forth in [Mother's proposed parenting plan]." *Id.* The Supreme Court reversed and remanded for entry of written findings under § 452.375.6. *Id.* at 698–99. The Court stated:

> Determining custody and custodial arrangements of children in dissolution actions is one of the most important and most sensitive duties of the court. The legislature has mandated written findings detailing the specific relevant factors that made the chosen arrangement in the best interests of the child. Written findings are necessary unless the parties have "agreed to a custodial arrangement."

*Id.* at 702 (quoting § 452.375.6). The Court noted that the parenting plan and designation of the child's residence address were "sub-issues of custody" but held that, "[s]o long as *any* issue or sub-

issue of custody is subject to contest between the parties and resolution by the court, written findings that include discussion of the applicable factors from section 452.375.2 [2] are required." *Id.* (emphasis added); *see also Schlotman v. Costa*, 193 S.W.3d 430, 433 (Mo.App. W.D.2006) ("Even if the parties agree to the same custody designation, if the parties disagree on the residence address of the child or on the parenting plan, these are sub-issues of custody that require the trial court's resolution in the form of written findings.")

In *Strobel*, the original judgment "contained no discussion of what factors made joint custody in the best interest of the children," but the trial court granted the father's motion to amend the judgment and "added findings regarding the best interest factors contained in section 452.375.2." 219 S.W.3d at 299. The trial court indicated in the amended judgment that it believed the mother was more likely to allow the child frequent, continuing, and meaningful contact with the father, the fourth factor under § 452.375.6, and that no other factor favored either parent. *Id.* The trial court also "made additional findings relevant to the fourth statutory factor," including that both parents were fit and proper to have custody and that the parties met regularly to discuss the chil-

---

2. Section 452.375.2 lists eight factors that the court "shall consider" when determining what is in the best interests of the children:
 (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
 (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
 (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

 (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
 (5) The child's adjustment to the child's home, school, and community;
 (6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....;
 (7) The intention of either parent to relocate the principal residence of the child; and
 (8) The wishes of a child as to the child's custodian.

dren and their activities before the current proceedings commenced. *Id.* This Court stated, "While a mere 'checklist' of the best interest factors indicating which factor weighs in favor of each parent is insufficient to comply with section 452.375.6, the findings need not mechanically discuss all eight factors listed in section 452.375.2, but must discuss the relevant factors in such a manner that meaningful appellate review is possible." *Id.* (internal citation, quotation, and brackets omitted). We held that the court's findings were sufficient to provide for meaningful appellate review and were supported by the record. *Id.* at 299–300.

In the case *sub judice,* the trial court's statement concerning the children's best interests is very similar to the statement that was held insufficient in *Buchanan.* Unlike in *Strobel,* the court denied Father's motion to amend the judgment, which included a request for the statutorily required findings concerning the children's best interests. Also unlike in *Strobel,* the judgment does not even mention the best interest factors under § 452.375.2. "While the trial court need not discuss factors that are not relevant, it is required to discuss those that are." *Davis v. Schmidt,* 210 S.W.3d 494, 503 (Mo.App. W.D.2007). "The purpose for the statutory requirement to detail the factors is to allow for more meaningful appellate review." *Id.* (internal quotation omitted).

The trial court's findings in this case are insufficient to allow for meaningful appellate review of whether designation of Mother's address as the children's for educational and mailing purposes is in the children's best interests. Accordingly, the case must be remanded for entry of written findings concerning the relevant factors under § 452.375.2. Point I is granted.

In Point II, Father contends that the trial court erred in failing to order the parties to split the income tax dependency deductions because Mother confirmed in open court that they had agreed to split the deductions. Mother concedes on appeal that this was error, although she did not do so before the trial court. In his reply brief, Father asserts that remedial measures are appropriate because Mother has already claimed deductions for both children on her income taxes. Upon remand, the trial court shall order the parties to split the income tax dependency deductions. The court may take additional evidence to determine whether the belated order on the dependency deductions resulted in a financial gain or loss by either party and, if so, the court may make such remedial orders as it deems appropriate, including, but not limited to, adjustment of the equalization payment. Point II is granted.

Father argues in his third point that the court's valuation of the marital home and division of assets and debts was an abuse of discretion. He asserts that the value assigned to the marital home was not supported by the evidence and that the court erred and abused its discretion in failing to include debts incurred after the parties physically separated in its calculation of the equalization payment.

"In dissolving a marriage, the trial court sets aside to each spouse his or her nonmarital property, then divides the remaining marital property and debts in a just manner after considering all relevant factors enumerated in section 452.330." *Dunnagan v. Dunnagan,* 239 S.W.3d 181, 184 (Mo.App. S.D.2007).

Section 452.330.1 provides, in pertinent part, that in fashioning a fair and equitable division of marital property, the trial court is required to consider all relevant factors, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

*Nelson v. Nelson,* 195 S.W.3d 502, 507 (Mo.App. W.D.2006). "The five statutory factors of § 452.330.1 are not exclusive, and there is no formula determining the weight to be given to the factors in dividing the marital property." *Id.* "The division need not be equal but must be fair and equitable given the circumstances of the case." *Dowell v. Dowell,* 203 S.W.3d 271, 276 (Mo.App. W.D.2006) (internal quotation omitted). "In review of the trial court's ruling, we presume it is correct, and the party who challenges the division carries the burden of overcoming that presumption." *Id.* "Accordingly, this court will interfere only where the division is so unduly favorable to one party that it constitutes an abuse of discretion." *Id.* (internal quotation and brackets omitted).

We first address Father's contention that the court abused its discretion by assigning a value of $250,000 to the marital home. Mother testified that the fair market value of the home was $256,000 based primarily on the January 2006 purchase price, and Father testified that the value was $235,000 based on a May 2007 appraisal. Father insists that the court's valuation of the home at $250,000 was arbitrary and not supported by the evidence because neither party testified that the fair market value of the home was $250,000.

 "In valuing marital property, the trial court may receive any relevant evidence on the issue, and we give great deference to the trial court's decision." *Id.* This Court will not disturb the trial court's valuation as long as it "is within the range of conflicting evidence of value offered at trial." *Id.* at 276–77 (internal quotation omitted). Contrary to Father's suggestion, "when the owners testify to two different values, the trial court is not bound to accept either estimate as exact." *Nelson,* 195 S.W.3d at 508. "The trial court is free to make its own determination of the fair market value of the property, but is prohibited from finding a fair market value that is not supported by the evidence." *Id.* The trial court's valuation of the marital home at $250,000 was clearly within the range of evidence offered by the parties, and the court did not abuse its discretion.

Father also asserts in Point III that the trial court abused its discretion by "leaving out" the credit card debts that the parties accumulated after separation when determining a fair and equitable distribution of the marital estate.

 Although trial courts were not obligated to distribute marital debts prior to 1998 because they were not considered marital property, the legislature amended § 452.330.1 in 1998 to require the court to "divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors." *Rogers v. Rogers,* 253 S.W.3d 134, 136 (Mo.App. W.D.2008). "[T]he principles governing the apportionment of marital debt are similar to those governing the division of marital property. . . ." *Id.* at 137. "Marital debt is debt acquired subse-

quent to commencement of the marriage unless an exception applies." *Travis v. Travis*, 163 S.W.3d 43, 48 (Mo.App. W.D. 2005). "The fact that one spouse did not control or actively participate in the decision to incur a debt does not preclude its allocation to that spouse where it is determined to be marital debt." *Id.* at 49 (internal quotation omitted).

Other than the valuation of the marital home, which is discussed *supra*, Father does not dispute the trial court's valuation or division of assets. The court awarded Father the marital home, which it valued at $250,000 with a debt of approximately $204,884, as well as the Buick LeSabre valued at $988 and checking accounts valued at $500. The court awarded Mother the Ford Windstar valued at $9,137, the Saturn valued at $885, and the life insurance policy valued at $1,000. It split the sole retirement account valued at approximately $15,800 equally between the parties. The court specified that these were the only items of marital property that remained to be divided and found that the parties had already divided all other personal property in a substantially equal and equitable manner.

 Father provided the majority of the evidence concerning debts. There was a Sam's Club card apparently in both parties' names with a balance of approximately $753 at the time of separation. Father had two credit cards in his sole name, Citicard and MBNA, which had balances of $750 and $500, respectively, when the parties separated. At the time of trial, the Citicard card had a balance of approximately $5,500 and the MBNA card had a

balance of approximately $7,500. Father testified that the majority of these balances were for general living expenses, plus $1,500 for Cassidy's bedroom furniture at his house and unspecified amounts for car insurance. Mother had three credit cards in her sole name, Sam's Club, Visa, and Nebraska Furniture Mart. Father stated that Mother's cards had no balance when the parties separated but had balances of $188, $1,400, and $327, respectively, at the time of trial.[3] Father testified that he did not believe Mother should have to pay any marital debt and that both parties should be credited for the debts that they had incurred since the date of separation.

The trial court explained its consideration of the evidence concerning debts at the conclusion of the trial, stating:

> The Court finds that with respect to debt the Citi–Card, MBNA and Sam's Card, as well as the other Sam's card, the Visa and the Nebraska Furniture Mart are marital property—marital debts. However, the Court is taking into consideration only the values of debts as of the date of separation for determination of division of—in calculation of the overall property and debt division, therefore assessing $750.00 of Citi–Card, $500.00 for the MBNA card, $753.00 for the Sam's Card for the husband, and none of the debts of the— current debts of the [wife], because none of them existed as of the date of separation.

The court then summarized its calculations concerning the equalization payment, stating that "the total assets are $55,670.00,[4]

---

**3.** Mother's statement of property indicated that the balances at the time of trial were $500 for Sam's Club, $2,000 for Visa, and $700 for Nebraska Furniture Mart, but Father testified concerning the values on his state-

ment of property, and Mother did not testify as to the value of those debts.

**4.** It appears that the court arrived at the "total assets" by adding together the assets listed in the judgment and subtracting the

divided by two is $27,835.00 each, less assets received by wife of $11,022.00, leaves an equalization payment due to wife in the amount of $16,813.00, payable within 60 days." In the judgment, the court stated that "each party has incurred separate debt since the date of separation" and "[t]he marital portion of the debt is [$750 to Citicard, $500 to MBNA, and $753 to Sam's]." The court ordered Father to assume the "marital portion" of the debts and ordered each party to assume any debts incurred by them after the date of separation.

Father argues that the court's statement at the conclusion of the trial shows that it improperly excluded marital debt from its analysis and the case must be reversed and remanded, relying on *Miller v. Miller*, 184 S.W.3d 174 (Mo.App. S.D.2006). In *Miller*, the trial court deducted the home mortgage and another marital debt from the wife's marital asset award, deducted one credit card debt from the husband's asset award, then compared the parties' respective property awards and calculated an equalization payment. *Id.* at 183. The trial court separately assigned to the husband all of the marital debts that he had incurred after the parties separated and expressly stated, " '*These debts were not included* in the division of marital property *in determining the equity of the distribution of the property and debt of the parties.*' " *Id.* at 183–84.

On appeal, the court stated, "A trial court has no discretion or leeway to leave out of its analysis any marital property or marital debt when deciding what is a fair and equitable distribution thereof." *Id.* at 184. The court noted that property and debt division do not have to be equal but must only "be fair and equitable and take

into account all relevant factors." *Id.* The court then stated:

> In effect, the court ordered [the husband] to make an equalizing payment by creating a fictional difference between the two net marital asset awards. It did so by ordering [the husband] to pay marital debts without using those debts in calculating [the husband's] marital asset amount. This was a misapplication of the law.

\*　　\*　　\*

> As a reviewing court, we ordinarily assume the trial court considered all the evidence when it divided the marital property and marital debt. The problem here, however, is that the trial court specifically stated that it did *not include* over $45,0000 of marital debt *in determining the equity of the distribution of the property* and then used that omission as the basis for its $20,500 equalization order. In doing so, the court committed reversible error.

*Id.* (internal citation omitted). The court noted that the trial court's rationale for assigning the debts incurred after separation was sound but stated, "We simply cannot find authority for excluding the subject material debts in deciding what is a just division." *Id.*

In the case at bar, the trial court's treatment of the parties' debts is virtually identical to that in *Miller*. Indeed, in the instant case, the trial court expressly stated that it did not consider the parties' post-separation debts "in calculation of the overall property and debt division," essentially saying the same thing that led to the Southern District's reversal in *Miller*. For the same reasons stated in *Miller*, we must reverse the trial court's distribution of assets and debts, as well as the equaliza-

---

debt on the home and the credit card debts as of the date of separation. The court separate-

ly split the retirement account in the amount of $15,800 through a QDRO.

tion payment. On remand, the trial court must take account of and divide all of the marital assets and marital debts in making an equitable division of those assets and debts, as well as in ordering any equalization payment between the parties.

Finally, Father contends that the court erred in ordering him to pay the equalization payment within 60 days because the vast majority of the property awarded to him was in the form of equity in the home, relying on *Waisblum v. Waisblum,* 968 S.W.2d 753 (Mo.App. W.D.1998). Since we are reversing and remanding the division of marital property and marital debts, and consequently the equalization payment, we need not address this issue. Point III is granted to the extent set forth above.

In conclusion, the trial court's judgment is remanded in part, affirmed in part, and reversed and remanded in part. The portion of the judgment designating the children's address for educational and mailing purposes is remanded for entry of written findings under § 452.375.2. The portion of the judgment valuing and dividing the marital property and marital debts, including the provision for an equalization payment, is affirmed as to the valuation and division of the marital residence. However, that portion of the judgment is reversed and remanded for entry of a judgment that accounts for all of the marital property and marital debts in making an equitable division of those assets and debts, as well as in ordering any equalization payment between the parties. We also reverse and remand the portion of the judgment awarding the income tax dependency deduction to Mother, with directions to enter a judgment splitting the deduction between Mother and Father, and for further proceedings concerning that issue not inconsistent with this opinion. In all other respects, the trial court's judgment is affirmed.

All concur.