

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| ALISON G. SENDLEIN, | ) | No. ED110187 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| v. | ) | Cause No. 17AB-DR00315-01 |
| | ) | |
| BRIAN B. SENDLEIN, | ) | Honorable Joseph W. Purschke |
| | ) | |
| Appellant. | ) | Filed: October 4, 2022 |

## Introduction

This case involves two distinct, but related, issues that arise when joint legal and physical custodians cannot agree on where their child should attend school. The first issue involves the designation of a minor child's residence for mailing and educational purposes under § 452.375.5.[1] The second involves the circuit court's ability to decide which school that a minor child should attend in the event the child's joint custodians cannot agree. The parties to this appeal do not agree on the standard that the circuit court should apply for either issue. Nor do they agree on whether the circuit court made the correct determination.

---

[1] All statutory references are to RSMo. Supp. 2021, unless otherwise noted.

As explained below, both issues fall within the category described by the Supreme Court of Missouri as "sub-issues of custody." As a result, when joint custodians cannot agree on these issues, the circuit court is to make a determination based on the best interests of the child in accordance with § 452.375.2. If the parties' disagreement begins after the initial judgment of dissolution, then the procedures and standard for modifying the judgment are those set forth in § 452.410, which permits modification of the original custody determination only upon proof that there has been a change in circumstances justifying the modification and that the modification is in the best interests of the child. Importantly, the legislature has directed that all issues related to custody, whether determined in the first instance or on a motion to modify, shall be determined in accordance with the best interests of the child. Section 452.375.2.

In this case, the circuit court determined that it was in the best interests of the child to designate her mother's address as the child's residence for mailing and educational purposes and also determined that the child should attend a local parochial school. Because these findings are supported by substantial evidence, the circuit court's judgment is affirmed.

## Factual Background and Procedural History

On January 31, 2018, the circuit court dissolved the marriage of Alison Osburg-Sendlein ("Mother") and Brian Sendlein ("Father"). The parties had one child born of the marriage. With the agreement of the parties, the circuit court entered a Judgment and Decree of Dissolution of Marriage granting Mother and Father joint legal and physical custody of their child. According to the dissolution decree and an agreed-to parenting plan, Mother and Father were to confer and agree on all issues related to their child's upbringing, including issues related to the child's education. The parenting plan included a provision under which the parties agreed to mediate any

disagreements, and if mediation was unsuccessful,[2] they were then permitted to submit the issue to the court for determination.

The dissolution decree designated Father's residence as the address of the child for mailing and educational purposes. Following the judgment, Father was to remain in the marital home in Franklin County while he prepared the home for sale. Mother planned to live temporarily with her mother, also in Franklin County, until she was able to move into her own home. Because both Mother and Father intended to change their residences shortly after the dissolution became final, they originally asked the circuit court to enter the judgment without a designated residence. The circuit court, however, refused the request because § 452.375.2(1) requires a designation be made. The parties then agreed to designate the address of their marital home.

Shortly after the circuit court entered the dissolution decree, Father notified Mother by text message that he was vacating the marital home prior to its sale. During this time, he resided at two separate residences, one in Wildwood, Missouri and another in St. Jacob, Illinois. Father was not in regular communication with Mother about which residence he used on a day-to-day basis or where the child resided while in his custody.

In response, Mother filed a motion to modify the dissolution decree, alleging that Father "unilaterally moved the residence of the child" without complying with the relocation notification requirements of § 452.377. Mother further alleged that Father consistently failed to communicate with her as to where their child was residing and failed to follow the terms of their parenting plan regarding transportation and exchanges. Mother requested that the circuit court modify the dissolution decree to designate her address as the child's address for mailing and education purposes. Father filed a response to the motion indicating that he had moved from the marital home

---

[2] The record does not indicate that a mediation occurred or that any party contested the decision to return to court due to failure to comply with the parenting plan's dispute resolution agreement.

to make it easier to sell and noting that he agreed to return to the marital home until after its sale. Mother's motion remained pending until it was tried by the circuit court nearly three years later on July 12, 2021.

After Father returned to the marital home, the parties agreed that their child would attend St. John the Baptist ("St. John's") for pre-kindergarten. St. John's is a parochial school located in Franklin County and offers religious instruction and curriculum from pre-kindergarten to eighth grade. The child had been previously baptized in St. John's parish. Mother also had attended St. John's school when she was a child, and the child's maternal grandmother taught at the school for fifteen years. Father paid for half of the child's school expenses for the 2019-2020 school year and enrolled her for the 2020-2021 school year.

On June 12, 2020, Father sent mother a letter stating that he intended to sell his home and relocate to a temporary address in Wildwood. According to the letter, Father planned to purchase a home in Wildwood, Ellisville, Ballwin, or Eureka. Father's letter stated that the primary reason for his move was to relocate into the Rockwood School District to ensure that their child could attend one of the "highest rated" school districts in Missouri. Six weeks later, Father sent a second letter providing Mother with a permanent relocation address and reiterating his intention to place their child in the Rockwood School District.

Mother filed objections to Father's relocation in the circuit court. Mother's objection did not focus on Father's chosen address, but instead, claimed that Father's stated intention to unilaterally move the child to the Rockwood School District was a violation of the dissolution decree and parenting plan. Mother noted that her motion to modify remained pending and that Father's relocation was an attempt to decide the issue of the proper residential address for educational purposes before the court had an opportunity to rule on the issue.

While the objections to Father's relocation remained pending, Father unilaterally withdrew the child from St. John's pre-kindergarten. Prior to the first day of school, Father notified Mother that he did not want the child to attend the first week of school because he wanted her to spend time with his immunocompromised mother. Mother agreed on the condition that the child should attend her first day of school. Father refused, however, and withdrew the child forty-eight hours before her first day of school. When he withdrew the child, Father told the school's administration that he was the child's designated residential parent. Father also informed Mother that the child would not attend the school unless compelled by court order. The circuit court held a hearing on Mother's objections and ordered the child's re-enrollment at St. John's on October 16, 2020. The circuit court indicated that the residential address and choice of school issues would be heard with Mother's motion to modify.[3]

The circuit court held a trial on Mother's motion to modify on July 12, 2021. Mother testified in detail about the child's friendships with other students at St. John's. Mother also testified that the child was involved in several community events and service projects sponsored by the school. The principal of St. John's testified to details about the school's curriculum, small class sizes, and opportunities for the students to practice the Catholic faith. The principal further testified that the child's performance on her kindergarten screening tests was successful and above average. Additionally, the child's maternal grandmother testified that she lives near the school and assists both parties by picking up the child from school and providing care for her.

---

[3] Though Mother never amended her motion to modify to include the choice of school issue, counsel for both parties represented during oral argument in this Court that they had agreed the circuit court should determine which school their child should attend. In Father's request for findings of fact and conclusions of law, Father specifically requested that the circuit court make findings regarding Mother's request for modification of the child's residential address and the child's attendance at St. John's. Neither party disputes that this issue was properly before the circuit court.

Father's evidence focused primarily on comparing the quality of the parties' local public school districts. Father presented testimony regarding testing, funding, teacher certifications, and training at public schools in the Pacific and Rockwood School Districts. Father's expert witness, however, admitted that she had never spoken to anyone from St. John's and was unfamiliar with the school's curriculum.

Following the trial, the circuit court entered a Judgment and Decree of Modification. The circuit court found that Mother had proven a substantial and continuing change of circumstances, although it acknowledged that only a simple change was required for modification. The circuit court then weighed the factors in § 452.375.2 and found that modification of the child's residential address was necessary to serve the child's best interests. The circuit court emphasized that Mother purchased a home in Franklin County where the child had lived all of her life. The circuit court noted that Mother's residence was near the child's school and church. The circuit court found that Mother's family, also residing in Franklin County, is very involved in the child's education and daily activities. Specifically, the circuit court found that the child's maternal grandmother assists both parties in picking up the child from school and lives within minutes of St. John's. The court also found that Father had failed on a number of occasions to communicate meaningfully as to issues of transportation, exchanges, and school selection. Specifically, the circuit court noted Father's inconsistent positions as to whether the child should attend St. John's.

The circuit court also found that it was in the child's best interests to continue her education at St. John's. The circuit court noted that the child was baptized in the Catholic faith at St. John's with the consent of both parties and was being raised in the Catholic faith by Mother. The circuit court emphasized the child's involvement in the church and the school's community-based activities. The circuit court found that both parties admitted the child performed well

6

academically, had multiple friends at school, and was content at St. John's. The court found that, though the public elementary school near Father's home was an excellent school, St. John's offered better academic and extracurricular activities in light of the small class sizes. The court discussed the school's philosophy, intimate setting, rural campus, and history in the community. The court noted that remaining at St. John's would allow the child to have consistency and continuity of education through middle school. In addition to concluding that it was in the child's best interests to attend St. John's, the circuit court also found the school met the particular educational needs of the child.

The circuit court ordered the child's continued attendance at St. John's, but did not order Father to pay tuition. The circuit court subsequently denied Father's motion to amend, for reconsideration, or for a new trial. This appeal follows.

**Standard of Review**

This Court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The circuit court's judgment is unsupported by substantial evidence when there is no evidence in the record tending to prove a fact that is necessary to sustain the judgment as a matter of law. *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014). This Court views the evidence in the light most favorable to the circuit court's judgment and defers to the circuit court's credibility determinations. *Id*. This Court accepts as true the evidence and inferences favorable to the circuit court's judgment and disregards all contrary evidence. *Id*.

**Analysis**

Father raises two points on appeal. First, Father argues that the circuit court's modification of the child's designated residential address was unsupported by substantial evidence because both parties testified that they did not want the child to attend the public school associated with Mother's address. Second, Father argues that the circuit court did not have authority to order the child's attendance at private school over his objection. Father also asserts the circuit court's order that the child continue in private school was unsupported by substantial evidence because both parties testified the child did not have particular educational needs.

**Point I**

We begin our analysis of Father's first point by determining the standard that the circuit court must use in assessing which joint custodian's address should be designated as the child's address for mailing and educational purposes. Father argues that the only factor a court should consider in making the determination is the public school system the child will attend at a given address. We disagree. The statutory language and controlling case law demonstrate that the designation of the "residential parent" is an issue related to custody and, like all other issues related to custody, requires a determination of the best interests of the child.

As part of any dissolution of marriage involving minor children, the circuit court must make a custody determination. Section 452.375. "Custody" is defined as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof." Section 452.375.1. When joint physical custody is awarded, "[t]he residence of one of the parents shall be designated as the address of the child for mailing and educational purposes." Section 452.375.5(1) & (2). This designation eliminates any uncertainty regarding the public school a child should attend or where official mail should be sent. The parent whose residence is so designated is sometimes referred to as the "residential parent," but this designation does not appear in any statute or confer

8

any particular benefit or additional authority on the parent. *Gaudreau v. Barnes*, 429 S.W.3d 429, 433 (Mo. App. E.D. 2014). It does not, for instance, permit the residential parent to choose a different school for a child simply by relocating their address if they would not otherwise be entitled to do so.

The Supreme Court of Missouri has determined that the designation of the residential parent is a term related to the custodial arrangement, which the Court has also referred to as a "sub-issue of custody." *Buchanan v. Buchanan*, 167 S.W.3d 698, 702 (Mo. banc 2005); *Clayton v. Sarratt*, 387 S.W.3d 439, 445 (Mo. App. W.D. 2013) ("The address designated for a minor child's educational and mailing purposes and the parenting time schedule are considered to be sub-issues of custody.") The Court has also held that all issues *and sub-issues* related to custody must be determined "in accordance with the best interests of the child." *Buchanan*, 167 S.W.3d at 702; *see also* Section 452.375.2. Moreover, when the issue is disputed, the circuit court is required to "consider all relevant factors and enter written findings of fact and conclusions of law" on the eight factors enumerated in § 452.375.2.

In arguing that the best interests factors are not relevant here, Father cites *Hall v. Utley*, 443 S.W.3d 696 (Mo. App. W.D. 2014). *Hall* held that "the designation of an address for the child for mailing and educational purposes is not a custody determination, rendering the eight factors found in section 452.375.2 inapplicable to the designation." *Id.* at 707-08. *Hall* did not offer a substantial discussion of this issue. It cited only *Loumiet v. Loumiet*, 103 S.W.3d 332, 339 (Mo. App. W.D. 2003), which held simply that the residential designation does not automatically go to the residence where the child will spend more time. *Hall* extrapolated from that holding that the residential parent designation is not a matter of custody. 443 S.W.3d at 707-08.

*Hall* is not controlling here because it is inconsistent with the Supreme Court of Missouri's opinion in *Buchanan*. *See* 167 S.W.3d at 702. *Buchanan* unequivocally held that the residence address for mailing and educational purposes is a "sub-issue" of custody that is governed by the best interests of the child. *Id.* It also held that when a sub-issue of custody is subject to contest between the parties and resolution by the court, written findings that discuss the applicable best interests factors in § 452.375.2 are required. *Id.* This Court is constitutionally bound to follow the latest controlling decision of the Supreme Court of Missouri. *McMillan v. Pilot Travel Centers, LLC*, 515 S.W.3d 699, 706 (Mo. App. E.D. 2016). *Hall* is also contrary to a number of other opinions from this Court that have applied the best interests analysis to changes in a child's residential designation. *See Schroeder v. Schroeder*, 486 S.W.3d 342, 345 (Mo. App. S.D. 2015); *see also Clayton*, 387 S.W.3d at 448. As a result, we decline to follow *Hall* to the extent it holds that the statutory best interests factors are inapplicable to designation of a child's residential address.

Having determined the appropriate standard, we next determine whether the circuit court's decision to modify the dissolution decree is supported by substantial evidence. "The standard for modification found in section 452.410.1 applies when a party seeks to modify the custodial arrangement, as well as when a party seeks to modify a term related to the custodial arrangement[.]" *Clayton*, 387 S.W.3d at 446; *J.D.W. v. V.B.*, 465 S.W.3d 82, 86 (Mo. App. E.D. 2015). Under § 452.410.1, a circuit court may only modify a prior custody decree if it finds "that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

For sub-issues of custody, the circuit court need not find that the change in circumstances be substantial or continuing. *Russell v. Russell*, 210 S.W.3d 191, 194 (Mo. banc 2007). The word

"substantial" does not appear in § 452.410.1 and should not be read into the statute. *Id.* And "continuing" changes are required only for modification of child support. *Hightower v. Myers*, 304 S.W.3d 727, 734 (Mo. banc 2010); *see also* Section 452.370. Because the child's residential address is a term related to custody, Mother's burden was only to demonstrate that a change had occurred and modification was in the child's best interests. Section 452.410.1.

Here, Father argues that the circuit court's modification was not supported by substantial evidence because both parties testified they did not want the child to attend public school in the district associated with Mother's address. Father's argument is heavily premised on his erroneous belief that the sole factor to be considered in modifying a child's residential address is the custodians' local public school districts. As a result, Father's argument focuses solely on Mother's testimony that she did not want their child to attend public school in the district where Mother resides and on evidence in the record demonstrating that the Rockwood School District is a reputable public school. Father's argument "ignore[s] not only this Court's standard of review, but also the principle that the circuit court is free to believe all, part, or none of the evidence." *Ivie*, 439 S.W.3d at 202 (citing *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014)).

The circuit court's judgment finding that modification of the child's residential address was necessary to serve the best interests of the child was supported by substantial evidence. Here, the circuit court provided written findings for all eight factors listed in § 452.375.2. The court emphasized that the child had resided in Franklin County for her entire life. Mother testified that Father's address was originally designated as the child's residential address because he lived at the parties' former marital home in Franklin County. The record demonstrates Father later moved from his residence to several temporary locations, including one out of state, while Mother remained in Franklin County. The circuit court noted that "Father voluntarily relocated from [the] Franklin

11

County area where the child has resided her entire life and prospered in her present and only educational facility." Mother, however, purchased her own residence in Franklin County and within the child's established community. Mother also testified that she is registered in St. John's parish where the child attends school, church, and other extracurricular activities. The circuit court concluded that the designation of Mother's address was necessary to continue the child's ongoing educational pursuits "in a stable environment." The modification was also consistent with the parties' original parenting plan because the child's residential address remained in Franklin County, where Father resided when he received the designation.

Father relies solely on evidence regarding the quality of public school districts and the parties' opinions of the schools. Reviewing courts do not consider contrary evidence on a substantial-evidence challenge. *Ivie*, 439 S.W.3d at 202. "Thus, any citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence." *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010). "Such contrary facts and inferences provide no assistance to this Court in determining whether the evidence and inferences favorable to the challenged proposition have probative force upon it, and are, therefore, evidence from which the trier of fact can reasonably decide that the proposition is true." *Id*.

Further, Father testified that during the marriage, the parties considered purchasing a home in Wildwood, but ultimately chose their marital home in Franklin County. Father testified the parties chose Franklin County to be close to Mother's family because his parents moved to Florida. Presently, Mother's family continues to remain in Franklin County, and Father's parents still live in Florida. Now, Father requests that this Court ignore all other circumstances and make the

12

determination based solely on the quality of public school districts. The eight factors listed in § 452.375.2 illustrate that there are many other important considerations in determining a child's best interests. Father's own testimony demonstrates that he considered other factors when he chose to move to Franklin County over a residence in the Rockwood School District during the parties' marriage. Father has failed to demonstrate that the circuit court's judgment was not supported by substantial evidence.

Point I is denied.

**Point II**

Father's second point on appeal challenges the circuit court's decision to modify the dissolution decree to designate St. John's as the child's school. Father argues that the circuit court's judgment is not supported by substantial evidence for two reasons. First, Father argues that the circuit court did not have the authority to select a school because the dissolution decree required Mother and Father to agree. Second, Father argues that the circuit court's finding that there was a particular educational need for the child to attend a private school was not supported by substantial evidence because both parents testified their child had no such need. Both of Father's arguments are based on a misunderstanding of the standard that the circuit court was to apply in making the choice of school.

When parents are awarded joint legal custody, they "share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority." Section 452.375.1(2). Because agreement on these essential issues is necessary, "[a]n important factor for the trial court to consider when determining legal custody is the parties' ability to cooperate and function as a parental unit." *Leone*

*v. Leone*, 917 S.W.2d 608, 614 (Mo. App. W.D. 1996). If the parents cannot "agree to agree," then joint custody is frequently not in the best interests of the child. *Id.*

Recognizing, however, that disputes may arise, § 452.410 permits parties to seek a modification of their custody decree. As noted in Point I, § 452.410 applies to both modifications of the entire custodial arrangement (e.g., changing from joint to sole custody) and modifications of an issue related to custody (e.g., modifying the parenting schedule or residential designation). *Clayton*, 387 S.W.3d at 446. As a result, where circumstances have changed and a modification is in the best interests of the child, parents may seek an order from the court resolving their disagreement. Section 452.410.

The choice of a child's school is one of the myriad "sub-issues of custody" that a circuit court may address when joint legal custodians cannot agree. This Court has long recognized that when joint legal custodians cannot agree on a school for the child, it is within the court's discretion to participate in school selection to protect the best interests of the child. *O'Connor v. Miroslaw*, 388 S.W.3d 541, 549 (Mo. App. W.D. 2012); *A.J.K. by R.K. v. J.L.*, 980 S.W.2d 81, 87 (Mo. App. E.D. 1998); *In re Marriage of Manning*, 871 S.W.2d 108, 111 (Mo. App. S.D.1994). Like all other disputed issues of custody, the circuit court is required to make written findings of the best interests of the child in accordance with § 452.375 when exercising its discretion to select the child's school. *Buchanan*, 167 S.W.3d at 702.

With this standard in mind, we address Father's arguments. Father's first argument is undermined by § 452.410. Though Father is correct that the original dissolution decree required Mother and Father to confer and agree on all issues related to the child's education, Mother and Father could not agree on where their child should go to school. As a result, they sought the intervention of the circuit court. As previously discussed, section 452.410 permits the circuit court

14

to make modifications to issues of custody in the appropriate circumstances. The fact that the previous parenting plan required the parents to agree on where their child went to school does not prevent a parent from later seeking modification of an issue of custody based on the best interests of the child.

Moreover, this argument is also undermined by the parenting plan itself. The parenting plan entered by the circuit court anticipated that Mother and Father may not agree on every point and provided a process for resolution of disputes. Pursuant to the parenting plan, if a disagreement arose, Mother and Father were to attempt to mediate the dispute. If mediation failed, the parenting plan then permitted either party to file a motion with the court seeking resolution of the issue. Mother has done just that, and the circuit court committed no error in hearing and ruling on the motion to modify as tried.

Father's second argument—that the circuit court erred in finding that St. John's meets a particular educational need of the child—is unpersuasive because it asks this Court to apply the wrong standard for the choice of school determination. The correct standard for the circuit court to apply when joint custodians cannot agree on a choice of school is the best interests of the child. *O'Connor*, 388 S.W.3d at 549. The circuit court applied that standard here and determined that attendance at St. John's was in the child's best interests.

Among the many findings the circuit court made, it determined that St. John's would provide a better educational environment for the child. The court noted the school's small class sizes and the consistency of the curriculum from kindergarten to eighth grade. The circuit court specifically found that St. John's provided "community-based interactions," organized service projects, and encouraged civic participation. The circuit court was particularly persuaded by testimony of the child's positive experiences at St. John's provided by Mother, the child's maternal

grandmother, and the child's principal. The court also noted that both Mother and Father testified that the child enjoyed attending St. John's and performed well academically. These findings are all unchallenged by Father and are supported by substantial evidence.

The "particular educational needs" test that Father urges this Court to apply does not apply to custody determinations. Instead, it is relevant to a determination of child support payments. Specifically, the phrase "particular educational needs" comes from Form 14, which is a form found in the Supreme Court Rules providing the formula circuit courts are to use in determining child support payments. *Nelson v. Nelson*, 195 S.W.3d 502, 512-13 (Mo. App. W.D. 2006); *Elliot v. Elliot*, 920 S.W.2d 570, 574-75 (Mo. App. W.D. 1996). One of the categories of child support costs found in Form 14 is the catch-all "other extraordinary child-rearing costs." The comments to Form 14 define this category as including "special or private elementary and secondary schooling to meet the particular educational needs of a child[.]" Form 14, Line 6e, *Comment A*.

There are numerous cases from this Court that apply this standard to disputes over child support payments. *See, e.g.*, *Rosas v. Lopez*, 556 S.W.3d 620, 625-26 (Mo. App. E.D. 2018); *Drury v. Racer,* 17 S.W.3d 608, 610 (Mo. App. E.D. 2000); *Garner v. Garner*, 973 S.W.2d 513, 515-16 (Mo. App. E.D. 1998). The typical situation in those cases involves a complaint of a parent who does not want to pay for private school. *See id*. In such a situation, the circuit court may order payment for private schooling over the wishes of one parent if it will meet the particular educational needs of the child. *Nelson*, 195 S.W.3d at 513.

Here, however, the circuit court did not order Father to pay private school expenses. Nonetheless, Father still maintains that the "particular educational needs" requirement applied. In support of this argument, Father primarily relies on *Seyler v. Seyler*, 201 S.W.3d 57 (Mo. App. E.D. 2006). In *Seyler*, one parent objected to private school and was ordered to pay half of the

child's private school expenses. *Id.* at 64. *Seyler* held "[t]he test for determining when a court should order private or parochial schooling for a child over the wishes of one parent is when such schooling will meet the particular educational needs of the child." *Id.* (citing *Drury,* 17 S.W.3d at 610). The court then determined that in that particular case, the parent advocating for private school had failed to prove that it would meet the particular educational needs of the child. *Id.* at 64-65. As a result, this Court reversed the circuit court's judgment ordering that the child should attend a private school and that the complaining parent should pay for it. *Id.* at 65.

Father argues that *Seyler* expanded the "particular educational needs" test from the child support context into child custody determinations. We do not read *Seyler* so broadly. In fact, this Court recently limited *Seyler*'s application to the child support context, holding that *Seyler* "demonstrate[s] that determinations whether to include private school tuition in child support awards are fact-specific, in a case-by-case analysis of whether the schooling will meet the particular educational needs of the child." *McLaughlin v. McLaughlin*, 639 S.W.3d 472, 480 (Mo. App. E.D. 2021).

Moreover, any suggestion that *Seyler* expanded the "particular educational needs" test outside of the child support context is undermined by the cases it relies on. Specifically, *Seyler* relies heavily on *Drury v. Racer*, which involved only the question of increasing a child support obligation to add the costs of private school. 17 S.W.3d at 609-10. In reversing the judgment, this Court explained that "[t]he fact that a parent did not agree to send a child to private school or does not want to pay for private school is not by itself enough to deny child support for educational expenses." *Id.* at 610 (citing *Shiflett v. Shiflett*, Mo. App. W.D. 1997). Instead, the parent that sought to increase child support had to show that private schooling met a particular educational need of the child. *Id.* The only issue in *Drury* was who was obligated to pay.

17

Here, the circuit court used the appropriate standard and determined that the child's attendance at St. John's was in the best interests of the child. Father does not challenge these findings, and we find that they are supported by substantial evidence. Though the circuit court also found that St. John's served a particular educational need of the child, as detailed above, such a finding was unnecessary given that Father was not ordered to pay the costs of the child's schooling.

Point II is denied.

## Conclusion

For the forgoing reasons, the judgment is affirmed.

John P. Torbitzky, J.

Gary M. Gaertner, Jr., P.J., and
Cristian M. Stevens, J., concur.