**Jeri Jill WOOD, Appellant,**

v.

**Mark Stephen WOOD, Respondent.**

**No. WD 74944.**

Missouri Court of Appeals,
Western District.

Dec. 26, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2013.

---

Mark Stephen Wood, Respondent pro se.

Lori E. McCutchen, Kansas City, MO, for Appellant.

Before Division Two: LISA WHITE HARDWICK, Presiding Judge, JAMES M. SMART and KAREN KING MITCHELL, Judges.

LISA WHITE HARDWICK, Judge.

Jeri Jill Wood (Mother) appeals from the circuit court's judgment modifying the dissolution judgment between her and Mark Wood (Father). Mother alleges error in the court's modification of the child custody terms and the child support and maintenance provisions of the decree. For reasons explained herein, we reverse the judgment, in part, and remand the case to the circuit court.

### FACTUAL AND PROCEDURAL HISTORY

Mother and Father's marriage was dissolved in June 2008. The court granted the parties joint legal and joint physical custody of their son. The dissolution judgment included a detailed parenting plan, which provided that Father would have the child on alternating weekends, every Wednesday after school, and certain holidays, while Mother would have the child at all other times. The court ordered Father to pay Mother $1476 per month in child support and $1800 per month in maintenance. Additionally, the court ordered Father to pay Mother approximately $145,000 to equalize the property division, compensate her for wrongfully withdrawing money from her retirement accounts, and pay her attorney fees. Father appealed, but we affirmed the dissolution judgment in a *per curiam* order. *Wood v. Wood,* 300 S.W.3d 621 (Mo.App.2010).

On February 24, 2010, Mother filed a petition for contempt against Father for his failure to pay child support, maintenance, and the other amounts he owed her

under the dissolution judgment. On March 1, 2010, Father filed a motion to modify the judgment. In his motion, Father sought primary care of the child and termination of his child support and maintenance obligations.

Following a hearing, the court issued a judgment finding Father in contempt on June 2, 2010. In the contempt judgment, the court ordered Father to fully pay each current month's child support and maintenance on or before the fifth day of each month. The court also ordered Father to pay: (1) within thirty days of the contempt judgment, the sum of $24,254.41 to satisfy his past due child support and maintenance obligations; (2) within ninety days, $23,000 for Mother's past due and current attorney fees; and (3) beginning 120 days after the contempt judgment, $5000 per month toward the arrearage and interest on the amounts owed under the dissolution judgment. The court stated that the failure to make any of these payments would result in Father's incarceration until such contempt was purged.

When Father failed to pay the $24,254.41 to satisfy his past due child support and maintenance obligations within thirty days after the contempt judgment, Mother filed a motion for a warrant of commitment. A warrant of commitment was issued, and Father was committed to the Platte County Jail on July 26, 2010. Father filed a motion to purge, but the court denied his motion. Father subsequently posted a $25,000 cash bond and was released from jail.

On September 23, 2010, the court forfeited Father's bond and ordered the $25,000 disbursed to Mother. The court also ordered the parties to put into effect, on a trial basis, a parenting plan that the guardian ad litem had proposed. The plan allowed Father more time with the child.

In November 2010, the court entered a second warrant and order of commitment for Father due to his failure to pay each month's child support obligation, his failure to pay Mother's $23,000 in attorney fees, and his failure to pay $5000 per month toward the arrearage and interest on past due accounts. Father was again committed to the Platte County Jail. Counsel for both parties negotiated a sum of $38,000 to bring Father into partial compliance with the contempt judgment. Father paid this amount and was released from jail.

In January 2011, Father's counsel withdrew from the case and Father chose to proceed *pro se*. Trial was held on Father's motion to modify on September 22, 2011. Following the trial, the court entered its judgment modifying the child custody terms and the child support and maintenance provisions of the dissolution decree. The court found that custody should remain joint legal and joint physical, with Mother's address used for school purposes, but the court approved and adopted the guardian ad litem's parenting plan.

With regard to child support, the court found that "all Form 14s submitted were unjust and inappropriate except for [Father's] Form 14 presuming that he could reasonably be expected to earn $9000.00 per month." The court approved and adopted that Form 14 and set Father's child support obligation at $400 per month. The court ordered this amount effective as of the date that Father filed his motion to modify, which the court stated was February 24, 2010. The court also ordered that Father be given a credit on past due child support from that date.

Lastly, on the issue of maintenance, the court found that Father's reduction in income was real and not due to his actions. The court reduced the maintenance award

to $10 per month. As it did with the modified child support amount, the court ordered that the modified maintenance amount be effective as of the date that Father filed his motion to modify, which the court again stated was February 24, 2010. The court ordered that Father have a credit against past due maintenance from that date.

Mother filed a motion to amend the judgment or, alternatively, for a new trial. In the motion, she asserted, among other things, that the court failed to make statutorily-required written findings concerning the custodial arrangement; failed to include the parenting plan in its judgment; and failed to make a sufficient record concerning the child support award. Pursuant to Rule 78.06, the motion was overruled by operation of law when the court did not rule on it within ninety days after it was filed. Mother appeals.

## STANDARD OF REVIEW

Appellate review of a judgment modifying a dissolution decree is under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 397 (Mo. banc 2001). We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We view the evidence and any reasonable inferences therefrom in the light most favorable to the court's decision and disregard all contrary evidence and inferences. *Pratt v. Ferber*, 335 S.W.3d 90, 93 (Mo. App.2011). In doing so, we recognize that the court was free to believe or disbelieve all or any part of the witnesses' testimony. *Id.*

## ANALYSIS

### Failure to Make Written Findings

In Point I, Mother contends the circuit court misapplied the law in modifying the original judgment because it failed to make proper findings on two issues with regard to child custody. First, Mother argues that the court failed to make written findings identifying the facts that constituted changes warranting modification. Second, Mother argues the court failed to make written findings concerning the custodial arrangement. Because the requirements regarding written findings on these issues are different, we will address them separately.

In determining that modification of the custody terms was warranted, the court found that, since the dissolution, "there has been a substantial change of circumstances with respect to custody ... such that the terms of the Decree should be modified." The court did not further specify the change of circumstances. Mother contends the court was required to identify, in the judgment, "facts that had arisen that constituted changes so substantial and continuing that made modification of the original decree to be in the child's best interests."

Initially, we note that, contrary to Mother's claim, the court was not required to find a "substantial" or "continuing" change of circumstances to modify the terms of the parties' joint physical custody arrangement. Section 452.410.1 [1] provides the proper standard for modification of a joint physical custody judgment. *Hightower v. Myers*, 304 S.W.3d 727, 734 (Mo. banc 2010). This statute states that, to

---

1. All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2011.

modify a prior custody decree, the court must find "that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." § 452.410.1. The modification judgment in this case maintained the joint legal and joint physical custody award from the dissolution judgment and changed only the parties' parenting time. "The requirement that the change be substantial is no longer appropriate where simple shifts in parenting time are at issue." *Russell v. Russell*, 210 S.W.3d 191, 197 (Mo. banc 2007). Where the modification "is simply a rearrangement in a joint physical custody schedule," the court must find only that a change of circumstances from the original judgment has occurred. *Id.* "Likewise, the statute authorizing modification of child custody judgments does not require that any change of circumstance be continuing; that is the standard for a modification of child support, not custody." *Hightower*, 304 S.W.3d at 734. Thus, the court had to find only a change of circumstances before modifying the parties' parenting time in this case.

Although Section 452.410.1 required the court to find a change of circumstances before it could modify the parties' parenting time, the statute did not require the court to make written findings identifying the facts that constituted the change of circumstances. Under Rule 73.01(c), the parties could have requested that the court make findings on that issue. Such a request must have been made on the record *before* the introduction of evidence or at a later time, if the court so allowed. *Id.* Neither Mother nor Father requested, before the introduction of evidence or at any time during the trial, that the court make written findings on any issues. Thus, the court did not err by failing to make written findings identifying the facts constituting a change of circumstances warranting modification.

■ The court did err, however, by failing to make written findings concerning the custodial arrangement. Section 452.375.6 provides that, when the parties have not agreed to a custodial arrangement, the court shall make written findings in the judgment based on the public policy in Section 452.375.4 [2] and on each of the specific relevant factors from Section 452.375.2 [3] that make a particular arrange-

**2.** Section 452.375.4 states Missouri's public policy concerning custody decisions:

The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

**3.** The factors listed in Section 452.375.2 are, in pertinent part:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

ment in the child's best interest. Additionally, if the court rejects a proposed custodial arrangement, the court must include a written finding in the judgment detailing the specific relevant factors from Section 452.375.2 that resulted in the rejection. § 452.375.6. "[S]ection 452.375.6 puts the burden on the court to issue written findings instead of on the parties" to request such findings pursuant to Rule 73.01(c). *Buchanan v. Buchanan,* 167 S.W.3d 698, 701 n. 3 (Mo. banc 2005).

Although Mother and Father agreed that they should continue to have joint physical and legal custody of their child, they did not agree on a parenting plan. Father wanted the court to continue the guardian ad litem's temporary parenting plan, while Mother wanted the court to reinstate the parenting plan ordered in the dissolution judgment. The court adopted and approved the guardian ad litem's parenting plan, stating only that the plan "was substantially performed by the parties" and that it "reflects the child's desire to have equal time with each parent."

In its judgment, the court did not make a written finding based on the public policy in Section 452.375.4. Likewise, the court made no written findings detailing the specific relevant factors from Section 452.375.2 that made the guardian ad litem's parenting plan in the child's best interest and that resulted in the rejection of Mother's proposal to reinstate the parenting plan from the dissolution judgment. " 'While the trial court need not discuss factors that are not relevant, it is required to discuss those that are.' " *Jones v. Jones,* 277 S.W.3d 330, 336 (Mo.App.2009) (citation omitted).

A parenting plan is a sub-issue of custody. *Buchanan,* 167 S.W.3d at 702. "So long as any issue or sub-issue of custody is subject to contest between the parties and resolution by the court, written findings that include discussion of the applicable factors from section 452.375.2 are required." *Id.* The purpose of this requirement is to allow for more meaningful appellate review. *Jones,* 277 S.W.3d at 336. The court's findings concerning the adoption of the guardian ad litem's parenting plan and the rejection of the original parenting plan are insufficient to allow for meaningful review.

Mother preserved her claim of error concerning the court's failure to make the required findings by raising it in her motion to amend the judgment. Rule 78.07(c). Accordingly, the case must be remanded for entry of written findings in compliance with Section 452.375.6. Point I is granted in part and denied in part.

### Failure to Include Parenting Plan in Judgment

In Point II, Mother contends the circuit court erred by failing to include the guardian ad litem's parenting plan in its judgment. Section 452.375.9 requires that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in [Section 452.310.8]." In its judgment, the court stated that it approved and adopted the guardian ad litem's parenting plan, "with the minor modification of inclusion of Easter as one of the holidays to be exchanged." The parenting plan was not set forth in or attached to the judgment. As Mother preserved this claim of error by

(5) The child's adjustment to the child's home, school, and community;
(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....;

(7) The intention of either parent to relocate the principal residence of the child; and
(8) The wishes of a child as to the child's custodian....

raising it in her motion to amend the judgment, the court's failure to include the parenting plan in the judgment pursuant to Section 452.375.9 requires remand. Point II is granted.

### Substantial and Continuing Change of Circumstances Warranting Modification

■ In Point III, Mother contends the circuit court erred in finding that there had been a substantial and continuing change of circumstances warranting modification of child support and maintenance. The court indicated in its judgment that the change of circumstances was Father's reduction in income, which the court found was real and not due to his actions. Mother argues that Father's reduced income did not constitute a change in circumstances warranting modification because his change of employment was voluntary, and the resulting reduction in his income and inability to pay expenses was known and foreseeable.

■ Child support and maintenance provisions of a judgment "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." § 452.370.1. To determine whether changed circumstances exist, the court is required to consider the parties' incomes. *McKown v. McKown*, 280 S.W.3d 169, 172 (Mo.App.2009). While a mere decrease in income does not, by itself, justify modifying maintenance, it may do so if the decrease renders the obligor unable to pay the original maintenance award. *Id.* A voluntary decrease in the obligor's income,

however, does not constitute a substantial and continuing change in circumstances supporting modification. *Lee v. Gornbein*, 124 S.W.3d 52, 56 (Mo.App.2004).

At the time of the dissolution, Father was employed as an investment advisor for UBS, making $16,500 per month, or $198,000 per year. In 2008, his income fell to $155,423. Father started looking for employment with another firm in August 2009 because UBS had "just cut everybody" who was generating revenue of $350,000 or below. Although Father was not cut at that time because his revenue was $375,000, his revenue subsequently fell to $325,000. According to Father, UBS "made it clear if you didn't make a half million revenue you would be without a job."

Consequently, Father accepted a job offer in September 2009 from Merrill Lynch, which had recently merged with Bank of America. One of the reasons Father took the job was because he had worked for Bank of America in the past and was planning to pick up all of his former Bank of America clients. Two weeks after Father began working for Merrill Lynch, however, Bank of America told him that he could not talk to his former clients. According to Father, this meant that he had to build his book from scratch.

Father's combined income in 2009 from UBS and Merrill Lynch was $81,873, and his income from Merrill Lynch in 2010 was $46,416.[4] Father is presently making $4000 per month, or $48,000 per year, at Merrill Lynch.[5] He has not yet met any of

---

**4.** Father testified that his taxable income for 2010 was actually $57,420, because it included a portion of a forgivable note for approximately $71,000 that Merrill Lynch gave him when he started working for the company in 2009. Father's tax obligation on the note is spread out over several years. Pursuant to the terms of the note, if Father leaves or is

fired within the first eight years of his employment, he will have to pay back a prorated portion of the note.

**5.** Father testified that he also has a short-term deferred income plan from Merrill Lynch worth approximately $201,000. He must remain employed with Merrill Lynch until Sep-

the company's goals to receive bonuses. Nevertheless, Father believes that he could make an average of $9000 per month, or $108,000 per year, and he asked the court to impute that income amount to him.

Father offered evidence that, not including the approximately $200,000 in past due child support, maintenance, and other amounts he owes Mother under the dissolution judgment, he has approximately $271,000 in other debts.[6] According to Father, he cannot file for bankruptcy to discharge any of these debts because his clients would be notified, which would likely cause him to lose his job as a financial advisor.

Viewed in the light most favorable to the judgment, the evidence indicates that Father's monthly income decreased by 75% since the dissolution. Even his imputed income amount represents a 45% decrease. The evidence also indicates that Father's reduction in income was not voluntary. While Father may have chosen the date his employment with UBS ended, he believed that his termination from UBS was imminent and that he was going to make more money at Merrill Lynch. That he ended up making significantly less money was for reasons outside of his control. Finally, the evidence indicates that Father's substantial decrease in income makes the terms of the original maintenance and child support awards unreasonable. We agree with Mother that many of Father's debts existed at the time of the dissolution judgment and, therefore, were contemplated by the circuit court in the dissolution judgment. However, Father's substantial decrease in income and his resulting inability to pay those debts and the original

child support and maintenance awards was not foreseeable.

Although Mother argues that there was evidence to support a contrary result, we must defer to the circuit court's decision to accept Father's testimony and to draw reasonable inferences from it. *Pratt*, 335 S.W.3d at 93. The court did not err in finding that Father's reduction in income constituted a substantial and continuing change in circumstances warranting modification. Point III is denied.

### Child Support Calculation

■ In Point IV, Mother contends the court erred in failing to calculate child support in conformity with Section 452.340 and Rule 88.01. Specifically, Mother alleges that Father's Form 14, on which the court based its child support award, contained improper amounts and incorrect calculations.

We are unable to review the accuracy of the Form 14 because the court did not include the Form 14 in its judgment, and neither its findings nor the record clearly indicate how the court arrived at the $400 child support amount. Moreover, because the court did not include the parenting plan in the judgment, we are unable to determine whether the court properly calculated Father's credit for overnight visits.

Regardless of whether the court accepts one of the parties' Form 14s or prepares its own, " 'the record should clearly show how the trial court arrived at its Form–14 amount.' " *Crow v. Crow*, 300 S.W.3d 561, 564 (Mo.App.2009) (citation omitted). The record in this case does not. Mother preserved her claim on this issue by including it in her motion to amend the judgment. Therefore, the child support award is reversed and remanded to the circuit court to make adequate findings allowing for

tember 30, 2014, however, and he cannot access the funds until that time.

**6.** This amount does not include $141,600 that Father owes to his father.

meaningful appellate review of the child support calculation. Point IV is granted.

### Retroactivity of Child Support Award

■ In Point V, Mother asserts the court erred by ordering the modified child support amount retroactive to February 24, 2010. Mother argues that the court had no authority to modify the child support to this date because it was before Father filed his motion to modify.

■ The language of the judgment indicates that the court intended to make the modified child support award retroactive to the date Father filed his motion to modify. The court erroneously stated that date as February 24, 2010, instead of March 1, 2010, the date Father actually filed his motion. The court " 'has no authority to modify child support retroactive to a date before the filing of the motion to modify and service of summons.' " *Lueck-enotte*, 34 S.W.3d at 398 (citation omitted). Therefore, the portion of the judgment ordering the modified child support award retroactive to February 24, 2010, is reversed and remanded to the circuit court.

As it is likely to recur on remand, we also address Mother's contention that the court erred in ordering the modified child support award retroactive to a date before the guardian ad litem's parenting plan was implemented on a trial basis. She contends that the modified child support award gives Father a 33% overnight custody adjustment based upon his parenting time under the guardian ad litem's parenting plan. Mother argues that, because the court did not order the parties to follow this plan until September 23, 2010, the modified child support award should not be made retroactive to a date before the plan was actually implemented.

Because we do not have the guardian ad litem's parenting plan, the Form 14, or a clear record of how the Form 14 was calcu-

lated, we cannot say whether the modified child support amount includes an adjustment for overnight custody based upon the guardian ad litem's parenting plan. If it does include such an adjustment, we note that the Directions, Comments for Use and Examples for Completion of Form 14 provide that the obligor's adjustment for overnight custody may be rebutted if, without fault of the obligee, the obligor does not exercise the periods of overnight custody on which the adjustment is based. Comment C(1) to Line 11. Hence, that the guardian ad litem's parenting plan was not implemented until September 23, 2010, would rebut Father's entitlement to an adjustment before that date.

Additionally, Mother argues that she rebutted Father's entitlement to the adjustment for the period after the court implemented the guardian ad litem's parenting plan because she presented "unrefuted" evidence that Father did not fully exercise his parenting time under the plan. Father testified, however, that he was "fairly consistent" in exercising his parenting time and that his inability to exercise any of his parenting time under the guardian ad litem's parenting plan was due to conflicts over this litigation. The circuit court was free to believe Father's testimony, which supports the court's finding that the parties "substantially performed" the guardian ad litem's parenting plan. We defer to the court's decision to accept Father's testimony on this issue. *Pratt*, 335 S.W.3d at 93.

The portion of the judgment ordering the modified child support award retroactive to February 24, 2010, is reversed and remanded to the circuit court to correct the retroactivity date. Point V is granted in part and denied in part.

### Retroactivity of Maintenance Award

■ In Point VI, Mother contends the court erroneously applied the law in order-

ing that the modified maintenance award be effective retroactively. In its judgment, the court reduced the maintenance award to $10 per month, effective the date of the filing of the motion to modify, and ordered that Father "have a credit against back due maintenance to the date of filing February 24, 2010."

Mother first argues that the court exceeded its authority because the court retroactively reduced Father's maintenance obligation to a date before he filed his motion to modify. As we noted with regard to the retroactivity of the modified child support award, the judgment indicates that the court intended to make the modified maintenance award retroactive to the date Father filed his motion to modify, which was March 1, 2010. Because the court erroneously stated that date to be February 24, 2010, the portion of the judgment ordering maintenance is reversed and remanded to the circuit court to correct the retroactivity date.

Mother next argues that the retroactive maintenance award is erroneous because it eliminates any existing maintenance arrearage. She argues that the court had no authority to modify retroactively maintenance installment payments that have accrued and are unpaid, citing *Meyers v. Meyers,* 22 S.W.2d 853, 853 (Mo.App.1929), and *Overman v. Overman,* 514 S.W.2d 625, 630 n. 2 (Mo.App.1974).

*Meyers* was decided before Section 452.370.6 was enacted in 1973, however. Likewise, *Overman,* which relied on *Meyers,* referenced the 1969 version of Missouri statutes and did not mention Section 452.370.6. Section 452.370.6 specifically provides that a maintenance award may be modified as to "installments which *accrued subsequent* to the date of personal service." (Emphasis added). The statute does not limit modification to only those accrued installments that have been paid.

While the court may consider unpaid accrued installments in determining whether to make the modified award retroactive, see *Zimmerman v. Zimmerman,* 913 S.W.2d 76, 79 (Mo.App.1995), the court does not exceed its authority under Section 452.370.6 by modifying unpaid accrued installments.

The portion of the judgment ordering the modified maintenance award retroactive to February 24, 2010, is reversed and remanded to the circuit court to correct the retroactivity date. Point VI is granted in part and denied in part.

### Impact of Retroactive Awards on Contempt Judgment

In Point VII, Mother contends that the court erred in making the modified child support and maintenance awards retroactive because, in doing so, the court eliminated the child support and maintenance arrearages that the court had ordered Father to pay in the contempt judgment. Mother argues that the retroactive awards, therefore, constitute a collateral attack on the validity of the contempt judgment. In support of her argument, Mother cites the principle that, "[w]here a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modified or by a proceeding in equity to prevent its enforcement, the attack is a 'collateral attack.'" *Barry, Inc. v. Falk,* 217 S.W.3d 317, 320 (Mo.App.2007) (internal quotation marks and citations omitted).

 Mother's argument erroneously presumes that the contempt proceeding was a separate suit from the dissolution. "A contempt action is a remedial action, coercive in nature, whose purpose is to enforce a remedy previously ordered in a previous adjudication of the parties' claims." *Grissom v. Grissom,* 886 S.W.2d 47, 55 (Mo.App.1994). The contempt ac-

tion was not a separate suit but, rather, was the court's enforcement of the dissolution judgment. See *id.*

The court had the authority to modify the dissolution judgment with respect to child support and maintenance. § 452.370.1. The court also had the authority to make any modification retroactive. § 452.370.6. The effect of the court's exercising its authority to retroactively modify the child support and maintenance awards was to purge Father of his contempt—not collaterally attack the validity of the contempt judgment. Point VII is denied.[7]

### CONCLUSION

The circuit court erred by failing: (1) to make written findings concerning the custodial arrangement in compliance with Section 452.375.6; (2) to include the parenting plan in the judgment; and (3) to make adequate findings allowing for meaningful appellate review of its child support calculation. Additionally, the court's judgment erroneously stated the retroactivity date for both the child support and maintenance awards. Therefore, those portions of the judgment are reversed and remanded to the circuit court. On remand, the court should also determine, with regard to the retroactive child support award, whether Mother rebutted Father's entitlement to the overnight visitation adjustment for the period before the guardian ad litem's parenting plan was implemented. The judgment is affirmed in all other respects.

ALL CONCUR.

7. Mother also argues in this point that Father's voluntary change of employment did not constitute a substantial and continuing change of circumstances supporting modification. We addressed and denied this allegation of error in our discussion of Point III.